UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
PRUDENTIAL EQUITY GROUP, LLC       :    07 CV 5606 (JSR)
                                   :
                Plaintiff,         :
                                   :
        v.                         :    **DECLARATION OF**
                                   :    **KAREN D. COOMBS**
THOMAS R. AJAMIE, AJAMIE LLP, ROBERT :
WEISS, ROBERT H. WEISS & ASSOCIATES, :
LLP, JOHN MOSCOW, ROSNER NAPIERALA, :
LLP, BRIAN ROSNER, DAVID ROBBINS,  :
KAUFMANN FEINDER YAMIN GILDIN &    :
ROBBINS, LLP, WALLACE SHOWMAN,     :
BERNSTEIN LITOWITZ BERGER &        :
GROSSMANN LLP, ROBERT KRAUS, KRAUS :
& ZUCHLEWSKI LLP, MARTIN KROLL and :
KROLL, MOSS & KROLL LLP            :
                                   :
                Defendants.        :
------------------------------------X

KAREN D. COOMBS deposes and states:

1.   I am an attorney licensed to practice before the Courts of this State and am associated with Proskauer Rose LLP, counsel for plaintiff Prudential Equity Group, LLC ("PEG") in the above-captioned matter. I submit this declaration in support of PEG's application for an *ex parte* order (1) directing it to deposit $4,482,944.88, the total amount due and owing by PEG pursuant to that portion of an arbitration award issued by the New York Stock Exchange claimed to be attributable to attorneys' fees (hereafter the "Disputed Fund") in the Court registry, in order to permit PEG to bring this statutory interpleader action, pursuant to 28 U.S.C. § 1335, against defendants, the various claimants to some or all of that Disputed Fund, and (2) as contemplated by 28 U.S.C. § 2361, temporarily enjoining and restraining the defendants from bringing or maintaining any other action or proceeding before any other Court affecting the Disputed Fund.

2. PEG's application is brought by Order to Show Cause because, as described more fully below, certain of the claimants named as defendants herein have already brought actions in competing jurisdictions claiming a right to the Disputed Fund. None of those actions has named all of the potential claimants such that they could all be bound, and, accordingly, PEG is at substantial risk of facing inconsistent and duplicative obligations as a result of these various actions. Indeed, on May 30, 2007, one of the claimants sought by *ex parte* application an Order compelling PEG to deposit the entirety of the Disputed Fund in the action that claimant filed in Harris County, Texas (the "Harris County Action") against PEG and two of the Defendants here. Because that Order was dissolved by the Harris County court, it does not prevent the action here; nonetheless, the actions of that claimant (including that claimant's recent threat to bring yet further claims against PEG and the Disputed Fund should PEG initiate this interpleader action) highlights the need for PEG to move quickly, thus necessitating its proceeding by *ex parte* application here.

3. As described more fully below, PEG seeks to bring this statutory interpleader action because it is unable to determine the competing rights and claims among the various defendants to the Disputed Fund PEG currently holds. PEG itself has no interest in the Disputed Fund, and is merely a stakeholder.

4. The remainder of this declaration describes the nature of the Disputed Fund and the competing claims thereto, identifies the litigations already pending pursuant to which PEG could be subject to inconsistent and duplicative obligations, and describes the actions taken in those other litigations that necessitate this *ex parte* application.

**The Disputed Fund Arises Out of An Arbitration Proceeding**

5. This action arises out of a May 18, 2006 arbitration award issued by a panel of the New York Stock Exchange in favor of the Petitioners Charanjit Sahni, Harpreet Sahni, Nasimang

Enterprises Avv/Nasimang Trust by Nand Sahni, and Charanjit Sahni, Charanjit Sahni Custodian Angad Sahni Utma, and Charanjit Sahni Custodian Simran Sahni Utma (collectively, "Petitioners"), directing PEG to pay certain specified amounts (the "Award"). A true and correct copy of this Award is attached hereto as Exhibit A.

6. Petitioners (through defendants Thomas Ajamie and Robert Kraus as their counsel of record) and PEG timely petitioned and cross-petitioned for confirmation and vacatur of the Award, respectively, to the Supreme Court of the State of New York, County of New York. Thereafter, the New York Supreme Court (Tolub, J.) filed a written decision dated December 15, 2006, which granted Petitioners' Petition to Confirm the Award, denied Respondent PEG's Cross-Petition to vacate, and directed the parties to settle an order (the "Decision"). A copy of the Decision is annexed as Exhibit B.

7. Each party submitted a proposed Order and, on February 15, 2007, the Supreme Court directed entry of the Order that was entered February 20, 2007 (annexed as Exhibit C), and Respondent PEG was served with Notice of Entry on February 28, 2007.

**PEG Becomes Aware of Competing Claims
to the Attorneys' Fees Portion of the Award**

8. Prior to the filing of the Petition and Cross-Petition, PEG was notified, by letter dated July 30, 2006, that an attorney, defendant Weiss purported to assert a charging lien for legal fees against any monetary award that was rendered in favor of Petitioners in this matter. A copy of this letter is attached as Exhibit D.

9. In light of this potential competing claim, PEG notified Petitioners' counsel of record, Thomas R. Ajamie, Esq., and advised him that in order to pay the monies directed by the Order, PEG would require adequate assurances from both defendant Weiss and defendant Ajamie, as well as Petitioners themselves, to ensure that PEG would not subject itself to

3

duplicative claims or put itself at risk of liability by paying the amounts set forth in the Order to Petitioner.

10. For several weeks, PEG attempted (without success) to receive adequate assurances from Petitioners and their counsel. In fact, during that period and thereafter, more individuals or entities counsel were identified by defendants. Ajamie and Weiss as also having potential claims to some portion of the Award as attorneys' fees.

11. As more and more delay was engendered by these ever-expanding potential claimants, and Petitioners' counsel's inability to deliver required documents to PEG, PEG became concerned that it would be prejudiced by Petitioners' delay. Specifically, the Order as entered by the Supreme Court provides that interest shall run on the amounts PEG is to pay "until paid." PEG had been prepared to pay the amounts set forth in the Order since late February 2007, when the Order was entered. Accordingly, because the delay in payment was solely caused by the multiple claims by purported Petitioners' counsel, PEG and Petitioners' counsel agreed that interest would cease to run on the Award as of March 8, 2007. Attached as Exhibit E is an email from defendant Ajamie confirming this agreement to cessation of interest.

**By Agreement, PEG Pays the Portion of**
**The Award Due to Petitioners**

12. As set forth below, PEG has already paid to Petitioners all amounts to which they are entitled under the Award, and they have executed and delivered full satisfactions of judgment to PEG. Petitioners are not parties to this action and have no claim to the Disputed Fund. The sole remaining dispute is with respect to the Disputed Fund, which is that portion of the Award allegedly attributable to attorneys' fees. Defendants in the present action cannot agree as to the disposition of that portion of the Award and therefore PEG faces numerous, competing and potentially duplicative claims to the Disputed Fund it holds.

13. Because Defendants in this action were unable to resolve their competing claims to the attorneys' fees portion of the Award, in March 2007, defendant Ajamie proposed to PEG a "70/30" method of payment. Under that process, PEG would deliver seventy percent (70%) of the total amount owing to an attorney IOLTA account – for delivery directly to Petitioners in full satisfaction of their claim to any monies due under the Award – and PEG would hold the remaining thirty percent (30%) of the total amount owing, a sum of $4,482,944.88 (*i.e.*, the Disputed Fund) pending joint instruction from all parties with potential claims to those funds. The purpose of that proposal was to permit delivery to Petitioner of the amounts they claimed to be entitled to under the Award, notwithstanding continued disputes among the various individuals and entities claiming some right to the remaining portion of the Award.

14. PEG agreed to this proposal, and, by email dated March 28, 2007, circulated an email to persons who had identified themselves or been identified as purporting to have a potential claim to any portion of the Disputed Fund (collectively, the "Claimants"), setting forth the terms and conditions of PEG's agreement to pay the 70%. A copy of that email is attached as Exhibit F.

15. In relevant part, the March 28 email provided that (a) the total amount due and owing from PEG under the Award is fixed at $14,943,149.61 (Ex. F ¶ 1(a)); (b) that upon receiving appropriate consents and releases from all Claimants, PEG would wire 70% of the amount (*e.g.*, $10,460,204.73) in full satisfaction of the amounts owed to Petitioners (Ex. F ¶ 7), (c) PEG would continue to hold the Disputed Fund, equal to the remaining 30% of the Award ($4,482,944.88), pending joint instruction from all Claimants (Ex. F ¶¶ 1, 8); and (d) that the $4,482,944.88 Disputed Fund was PEG's total maximum aggregate liability to any and all of the Claimants (Ex. F ¶ 6). Importantly, however, the March 28 email reserved to PEG the right, but

not the obligation, to take steps to obtain a Court order to deposit the 30% Disputed Fund with the Court if joint instruction was not forthcoming before March 29, 2007.

16. All Defendants, other than Rosner and Rosner & Napierala, LLP, which had not yet made a claim or even been identified by any of the Defendants as possible claimants, agreed to the March 28 proposal.

17. In reliance on that agreement, on or about April 3, 2007, PEG wired 70% of the Award monies, in full satisfaction of the amount owed to Petitioners. Petitioners have delivered to PEG full satisfactions of judgment, and have released PEG from all liability as against Petitioners.

**The Competing Claims to the Disputed Fund Remain Outstanding, And Have Now Led to Competing Litigations**

18. Since that time, PEG has not received the contemplated joint instruction regarding the Disputed Fund and thus continues to hold it.

19. PEG has learned that the Defendants remain steadfast in their competing claims to the Disputed Fund.

20. On or about March 28, 2007, defendants Ajamie and Ajamie LLP filed a Second Amended Petition and Request for Temporary Restraining Order in the 151st Judicial District of Harris County, Texas against defendants Robert Weiss and Weiss & Associates, P.C. and PEG (the "Harris County Action"). A copy of the Second Amended Petition and Request is attached as Exhibit G. Defendant Ajamie contends in that action that he is entitled to the full amount of the Disputed Fund, and that defendant Weiss has no right to the Fund. The petition seeks declaratory relief, partition and damages as against defendants Weiss and Robert H. Weiss & Associates, P.C.

21.  The Second Amended Petition further seeks a temporary restraining order compelling PEG immediately to place the funds at dispute into the Court registry in Harris County, Texas.

22.  PEG, although named as a defendant, has not been served in the Harris County Action.

23.  The Harris County Action does not include all of the Defendants to the present action, who have made or may make claims with respect to the Disputed Fund.

24.  On April 26, 2007, defendants Weiss and Robert H. Weiss & Associates, P.C. filed a complaint in the Supreme Court of the State of New York, County of New York, against, *inter alia*, defendants Ajamie and Ajamie LLP. A copy of that complaint is attached as Exhibit H. Defendants Weiss and Weiss & Associates contend that defendant Ajamie should not receive any portion of the Disputed Fund, and that Weiss and Weiss & Associates should be granted the fund.

25.  The action filed by defendant Weiss and Robert H. Weiss & Associates, P.C. in the Supreme Court of the State of New York does not include all of the defendants to the present action who have made or may make claims with respect to the Disputed Fund.

26.  On information and belief, defendants Ajamie, Ajamie LLP, Weiss and Weiss & Associates are in the process of litigating jurisdictional and other preliminary issues in the two pending actions.

**Additional Claimants Have Identified Themselves**

27.  Further, in April or May 2007, defendants Rosner and Rosner & Napierala, LLP made a possible claim to the Disputed Fund. By telephone call to PEG's prior counsel, defendant Rosner, identifying himself as a member of defendant Rosner & Napierala, LLP stated

that his former partner, defendant John Moscow, has performed work on the arbitration while employed as a contract partner at Rosner & Napierala. Accordingly, while defendant Moscow has asserted that he is due some portion of the Disputed Fund personally, defendants Rosner and Rosner & Napierala have asserted that Moscow's claim to the Disputed Fund belongs to them, not defendant Moscow.

**The Parties to the Competing Litigations
Are Unable to Resolve PEG's Concerns**

28.     In light of the competing litigations, on May 25, 2007, counsel for PEG wrote to counsel for defendants Ajamie, Ajamie LLP, Weiss and Weiss & Associates, P.C., advising them the PEG was concerned that neither proceeding included all potential claimants to the Disputed Fund, and thus, that the proceedings could potentially result in PEG facing successive, duplicative, or inconsistent directions with respect to the Disputed Fund. Accordingly, PEG advised the defendants that PEG would give them an until the middle of the next week to work out their jurisdictional disputes and join all potential claimants in a single action. If defendants did not do so by then, however, PEG advised the defendants that it intended to commence an interpleader action with respect to the Disputed Fund. A copy of that letter is attached as Exhibit I.

29.     Since sending that letter, counsel for PEG had several communications with counsel for defendants Ajamie, Ajamie LLP, Weiss and Weiss & Associates, P.C. These communications, however, were unsuccessful in resolving PEG's concerns, *i.e.,* ensuring that all potential claimants to any portion of the Disputed Fund were included in any action purporting to affect the Disputed Fund, and ensuring that PEG not be subject to successive, duplicative, or inconsistent directions with respect to the Disputed Fund.

### Defendant Ajamie Unsuccessfully Seeks to Enjoin
### Deposit of the Disputed Fund in Texas State Court

30. On May 30, 2007, defendant Ajamie made an *ex parte* application for a temporary restraining order against PEG in the Harris County Action, seeking to enjoin PEG "from interpleading in any court, save and except the registry of this Court [*i.e.,* Harris County], any and all funds held by it that are attributable to the award . . ." Defendant Ajamie further sought a mandatory injunction ordering PEG to deposit the Disputed Fund in Harris County's Court registry. A copy of the *ex parte* temporary restraining order is attached as Exhibit J.

31. Defendant Ajamie did not serve PEG with the petition in the Harris County Action until two days *after* obtaining his *ex parte* Temporary Restraining Order. Ajamie sent a copy of the Temporary Restraining Order by sending it via fax and certified mail to David Picon, Esq., a partner of Proskauer Rose LLP in New York, New York. The Proskauer firm has not filed any notice of appearance for PEG in the Harris County Action. Mr. Picon is not authorized to accept service for PEG in the Harris County Action and never agreed to accept service for PEG in the Harris County Action. Indeed, defendant Ajamie has never asked Mr. Picon to agree to accept service on behalf of PEG in the Harris County Action.

32. The papers submitted by defendant Ajamie in support of his application for the Temporary Restraining Order did not disclose that PEG had *not* been served. Defendant Ajamie also failed to disclose that there were numerous other claimants to the Disputed Fund he sought to compel PEG to deposit in Harris County, and that the majority of those claimants were not parties to the Harris County Action. Nor did Ajamie disclose to the Court that his application was in breach of his March 29, 2007 agreement with PEG, which explicitly reserved to PEG the right, but not the obligation, to take steps to deposit the Disputed Fund in court. *See* Exhibit F.

33. Through counsel in Texas, PEG promptly moved to dissolve the *ex parte* Temporary Restraining Order entered in Harris County. Following a hearing on June 11, 2007, Judge Caroline Baker of the Harris County Court dissolved the temporary restraining order, permitting PEG to file the present action. A copy of Judge Baker's Order dissolving the temporary restraining order is attached as Exhibit K.

**Defendant Ajamie Now Threatens Further Litigation**

34. I am advised that defendant Ajamie, through his counsel, has stated an intention to amend his complaint in the Harris County Action and sue PEG for conversion and breach of contract with respect to the disposition of the Disputed Fund, should PEG initiate this interpleader action. Such a claim is not only baseless, but violates the very purpose of federal statutory interpleader, and necessitates that PEG immediately seek preliminary injunctive relief to enjoin Ajamie's threatened claim, and any other claim by the defendants in this action relating to the Disputed Fund.

35. Section 2361 of Title 28 of the United States Code expressly provides for both discharge of the stakeholder, and for preliminary injunctive relief prohibiting any proceeding affecting the *res* which is the subject of the interpleader pending the interpleader court's further determination of the action. That statute provides:

> In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and *enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action*, until further order of the court. . .Such district court shall hear and determine the case and may *discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.*

36. In light of the currently-pending contradictory actions potentially affecting the Disputed Fund, and the threat by defendant Ajamie to initiate additional action against PEG in response to the interpleader action, PEG respectfully submits that temporary injunctive relief is appropriate here.

37. No prior request for this relief has been made.

I swear under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
June 12, 2007

_____
KAREN D. COOMBS