**EXHIBIT B**

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

**WALTER B. TOLUB**                                                    PART 15

Index Number : 107536/2006
SAHNI, CHARANJIT
vs
PRUDENTIAL EQUITY GROUP, INC.
Sequence Number : 001
CONFIRM AWARD

INDEX NO.
MOTION DATE 9/8/06
MOTION SEQ NO.
MOTION CAL NO.

The following papers, numbered 1 to ____ were read on this motion to/for ____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | |
| Answering Affidavits — Exhibits | |
| Replying Affidavits | |

Cross-Motion: ☒ Yes  ☐ No

Upon the foregoing papers, it is ordered that this motion

**IN ACCORDANCE WITH ACCOMPANYING MEMORANDUM DECISION.** IS DECIDED

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

Dated: 12/1/06

                                                            WALTER B. TOLUB
                                                                      J.S.C.

Check one:   ☒ FINAL DISPOSITION    ☐ NON-FINAL DISPOSITION
Check if appropriate:   ☐ DO NOT POST    ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : IAS PART 15
------------------------------------------x
In the Matter of the Arbitration Between

CHARANJIT SAHNI, HARPREET SAHNI, NASIMANG
ENTERPRISES AVV/NASIMANG TRUST by NAND
SAHNI and CHARANJIT SAHNI, CHARANJIT SAHNI
CUSTODIAN ANGAD SAHNI UTMA, and CHARANJIT
SAHNI CUSTODIAN SIMRAN SAHNI UTMA,

                  Petitioner,      Index No. 107536/06

   - against -

PRUDENTIAL EQUITY GROUP, INC.,

                  Respondent.
------------------------------------------x

**WALTER TOLUB, J.:**

    Petitioners move, pursuant to CPLR article 75, to confirm the award of arbitrators, dated May 18, 2006, against respondent, Prudential Equity Group, LLC, s/h/a Prudential Equity Group, Inc. ("Prudential"). Respondent cross-moves to dismiss the petition and cross petition vacate a portion of the award.

**BACKGROUND**

    Petitioners, former customers of Prudential, brought claims against Prudential and four of its employees arising out of alleged multimillion dollar securities losses. Petitioners Charanjit Sahni and Harpreet Sahni are husband and wife, and Angad Sahni and Simran Sahni (collectively, the "Sahni family") are their children. Petitioner Nasimang Enterprises AVV/Nasimang Trust ("Nasimang Trust") is owned by the Sahni family. Charanjit Sahni, Harpreet Sahni, and Nand Sahni, Charanjit's mother, are

its officers. Prudential is a registered broker-dealer and now part of Wachovia Securities.

Petitioners maintained that in February 2000, they transferred approximately $23 million to Prudential for trading, and that, within a few months, they experienced losses in excess of $21 million. They asserted claims against Prudential for negligence, breach of fiduciary duty, unsuitable trading, lack of supervision, and other violations of securities practices in connection with their alleged losses.

On April 16, 2002, petitioners signed a written agreement consenting to submit their claims against Prudential to binding arbitration. Prudential entered into a similar agreement on June 21, 2002.

At the start of the arbitration proceeding, petitioners withdrew the claims against two of the Prudential employees. The proceeding encompassed more than 40 days of hearings over a period of 2½ years, at which dozens of witnesses testified and thousands of exhibits were introduced. Petitioners attempted to portray Charanjit Sahni as an unsophisticated investor whose accounts were ruthlessly traded by a Prudential broker without adequate supervision. However, Prudential tried to depict him as an investor who maintained full control of his family's accounts and directed all trading modalities, including stock selection and strategy.

After evaluating the evidence, the panel of arbitrators dismissed the claims against the two remaining Prudential employees, and determined that the responsibility for the investment losses should be shared. Thus, the panel issued an award, dated May 18, 2006, requiring Prudential to pay the sum of $11,830,516, plus fees, to petitioners. In particular, the award required Prudential to pay $141,897, plus interest, to Simran Sahni; $472,619, plus interest, to Angad Sahni; $816,000, plus interest, to Charanjit Sahni and Harpreet Sahni; and $10.4 million, plus interest, to Nasimang Trust.

The arbitrators questioned petitioners' failure to name their broker, Mitesh Shere, as a respondent, and concluded that Charanjit Sahni and Mitesh Shere "were in effect 'partners' in the loose sense of the term in trading the accounts and relied on each other constantly." The arbitrators also noted that the nature of the partner relationship was evidenced by "the tremendous volume of phone traffic between the two and credible testimony that Sahni was virtually a fixture at the branch office" and "in the opening account documentation at [Prudential] granting Shere trading authority, and which was crafted by Shere and Sahni - perhaps deliberately - so that Prudential could not achieve the appropriate level of supervision required of such discretionary accounts" (Award, Notice of Petition, Exh A). The arbitrators further stated:

> At the same time, this close and obviously personal relationship gave branch personnel

> the false impression that Sahni was entirely at home with investments and markets and the trading strategies, including the heavy use of margin he was employing ... .
>
> This sense of security, however rational, was misplaced. If, as it appears, Sahni was in the office constantly, it would have required no Herculean effort for the branch manager or operations manager to visit with him, find out the kind of business he and Shere were doing, and get direct confirmation that there were no difficulties. This apparently was never done in depth. Documents from a firm where Sahni had had accounts previously amply demonstrate the kinds of memorialization of client contact sorely lacking here.

(*id.*). As such, the arbitrators concluded that "responsibility for managing the accounts were shared by Shere and Sahni and that, Prudential as the ultimate party responsible and Shere's employer, should bear approximately half of the investment losses that occurred in the Nasimang and joint accounts" (*id.*).

As to the Sahni children's custodial accounts, the arbitrators determined that although Prudential acted in accordance with firm policy and written guidelines, it nevertheless facilitated Sahni's raiding of the custodial accounts to cover margin calls in the main investment account. Thus, the arbitrators awarded full compensation for the custodial accounts, with interest.

Petitioners now make a timely application to confirm the award. Respondent opposes the application seeking confirmation and cross-petitions to vacate so much of the award as imposes any

4

liability on it. Petitioners, in turn, seek sanctions against Prudential for filing a frivolous cross petition.

## DISCUSSION

The submission agreements state that the undersigned parties "agree and understand that the arbitration will be conducted in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization" (Notice of Petition, Exhibits B, C, ¶ 3). Both parties agree that the Court need not determine whether New York law or the Federal Arbitration Act ("FAA") applies and the Court agrees to the extent that by either measure, the award must be confirmed.

### New York Law

Under New York law, courts may vacate arbitration awards only in some limited circumstances, namely, when the award violates a strong public policy, is irrational, or clearly exceeds a specifically enumerated limitation on an arbitrator's power under CPLR 7511(b)(1)[1] (*Matter of New York State Correctional Officers & Police Benevolent Assn.*, 94 NY2d 321, 326 [1999]). "A court cannot examine the merits of an arbitration award and substitute its judgment for that of the arbitrator

---

[1] Under CPLR 7511(b)(1), an arbitration award must be vacated if the court finds that a party to the proceeding was prejudiced by (1) corruption, fraud or misconduct in procuring the award; (2) partiality of an arbitrator; (3) an arbitrator exceeding his power or so imperfectly executing it that a final and definite award upon the subject matter submitted was not made; or (4) the failure to follow procedure.

5

simply because it believes its interpretation would be the better one" (id.). "Indeed, even in circumstances where an arbitrator makes errors of law or fact, courts will not assume the role of overseers to conform the award to their sense of justice" (id.).

### Federal Law

The FAA, 9 USC 1, et seq., embodies a strong liberal policy favoring arbitration agreements, and provides for extremely limited judicial review of an arbitration award (see Matter of Arbitration No. AAA13-161-0511-85 Under Grain Arbitrtion Rules, 867 F.2d 130, 133 [2d Cir 1989]). A court may vacate an arbitration award only on the grounds set forth in § 10 of the FAA,[2] or on one of the several nonstatutory grounds, such as manifest disregard of the law or irrationality (see Uram v Garfinkel, 16 AD3d 347, 348 [1st Dept 2005]).

In this case, Prudential essentially argues that the award should be vacated on the grounds that it is irrational and in manifest disregard of applicable law. Specifically, Prudential

---

[2] 9 USC § 10(a) states, in part, that an arbitration award may be vacated:
   (1) where the award was procured by corruption, fraud, or undue means;
   (2) where there was evident partiality or corruption in the arbitrators, or either of them;
   (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
   (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

6

contends that the award is irrational since it imposes liability on Prudential, presumably under a theory of respondeat superior, without any finding of wrongful conduct on the part of the four Prudential employees against whom the claims were either withdrawn or dismissed.

Contrary to Prudential's position, however, the dismissal of all claims against Prudential's employees does not render the arbitration award against Prudential irrational. There was an independent basis for finding liability against Prudential other than one grounded upon the negligence of its employees (see *Matter of Donald & Co. Secs., Inc. [Jones]*, 270 AD2d 56 [1st Dept 2000]). As noted, the award states, among other things, that Prudential failed to adequately maintain and document client contact regarding the Sahni accounts or to get direct confirmation that there were no difficulties, and that Prudential facilitated the raiding of the Sahni children's custodial account by Charanjit Sahni to cover margin calls in the main investment account. Thus, Prudential has not established that the award should be vacated for irrationality.

Nor does Prudential demonstrate that the award reflects a manifest disregard of the law. A party seeking to vacate an arbitration award on the basis of manifest disregard of the law must show that "the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether," and that "the law ignored by the arbitrators was well defined,

7

explicit, and clearly applicable to the case" (*Wallace v Buttar*, 378 F3d 182, 189 [2d Cir 2004]). Manifest disregard of the law "clearly means more than error or misunderstanding with respect to the law" (*Merrill Lynch, Pierce, Fenner & Smith, Inc. v Bobker*, 808 F2d 930, 933 [2d Cir 1986]). The party challenging an award for manifest disregard of the law must demonstrate that the arbitrator actually knew about the relevant rule of law (*D.H. Blair & Co. v Gottdiener*, 462 F3d 95, 111 [2d Cir 2006]). "[T]he term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it" (*id.*, quoting *DiRussa v Dean Witter Reynolds, Inc.*, 121 F3d 818, 821 [2d Cir 1997]).

Here, Prudential urges that the arbitrators disregarded NASD Rule 2330(f), which, in essence, prohibits brokerage firms from sharing directly or indirectly in the profits or losses in any account of a customer. However, Prudential offers nothing to establish that the arbitrators actually knew about the rule and chose to disregard it. The conclusory assertion that the average person qualified to be an arbitrator would know the particular rule is insufficient (*D.H. Blair & Co. v Gottdiener, supra*).

Petitioners have made a timely application to confirm the arbitration award, and Prudential has failed to advance any valid grounds for modifying or vacating it. Thus, the award must be confirmed (*Allstate Ins. Co. v Dental Health Care, P.C.*, 24 AD3d 437, 438 [2d Dept 2005]).

8

The request for sanctions is denied.

Accordingly, it is

ORDERED that the petition is granted and the award rendered in favor of petitioners and against respondent is confirmed; and it is further

ORDERED that the cross motion to dismiss the petition and cross petition to vacate the award are denied; and it is further

ORDERED and ADJUDGED that petitioners have judgment in the amount of $11,830,516, plus interest at the rate of 9% per annum from the date of May 18, 2006, as computed and taxed by the Clerk.

Settle Order.

Dated: 1-/15/06

ENTER:

Hon. Walter B. Tolub, JSC