**EXHIBIT H**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------x

Robert H. Weiss and Robert H. Weiss &
Associates, P.C.

                            Plaintiffs,

    - against -

Thomas R. Ajamie, and Ajamie LLP and
Schirrmeister Ajamie,

                            Defendants
----------------------------------------------------------x

07601417

SUMMONS
Index No.
Date Filed:

To the above-named Defendant:

    YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, NY
       April 26, 2007

                                        Richard M. Maltz, Esq.
                                        488 Madison Avenue 10th Flr
                                        New York, NY 10022
                                        212-705-4804

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X

Robert H. Weiss and Robert H. Weiss &
Associates, P.C.

        plaintiffs,

-against-                            VERIFIED COMPLAINT

                                                 Index No.

Thomas R. Ajamie, and Ajamie LLP and
Schirrmeister Ajamie

        defendants.

FILED APR 30 2007 NEW YORK COUNTY CLERKS   07601417

-----------------------------------------------------------------X

Plaintiffs, Robert H. Weiss and Robert H. Weiss & Associates, P.C., by their attorney, Richard M. Maltz, PLLC, for their verified complaint against defendant Thomas R. Ajamie, Ajamie LLP and Schirrmeister Ajamie, allege that:

### PARTIES

1.    Plaintiff, Robert H. Weiss is an attorney admitted to practice law in the State of New York and Washington, D.C., and is sole shareholder of plaintiff Robert H. Weiss & Associates, P.C., a professional corporation, incorporated in the State of New York, with a principal place of business at 50 Jericho Turnpike, Jericho, New York 11753 (collectively "plaintiff").

2.    Defendant, Thomas R. Ajamie, upon information and belief, is an attorney admitted to practice law in the State of Texas with a principal place of business at 711 Louisiana, Houston, Texas 77002. Defendant is not admitted to practice law in the State of New York. Defendants Ajamie, LLP and Schirrmeister Ajamie, LLP are limited

liability partnerships separately registered in the State of Texas with a principal office at 711 Louisiana, Houston, Texas 77002. (collectively as "defendants")

## JURISDICTION

3. This Court has jurisdiction over defendant and this matter pursuant to Civil Practice Law & Rules ("CPLR") §§ 302(a), 313 and 314 based upon the following: the defendant contracted to perform legal services in the State of New York and performed said services in New York and it is the payment for those services that are in dispute; the parties entered into a fee-sharing agreement with respect to legal services to be performed in New York by the parties and defendants breached this agreement; the legal fees in question will be paid to one or more of the parties by a New York corporation, a New York law firm or through a New York court, and, the legal fees are physically located in a New York bank account.

## FACTS

4. In or about February 2000, Charanjit Sahni, Harpreet Sahni, Nasimang Enterprises, AVV/Nasimang Trust by Nand Sahni and Charanjit Sahni; Charanjit Sahni Custodian Angad Sahni Utma; and Charanjit Sahni Custodian Simran Sahni Utma (collectively "Sahni Clients") tendered $23 million to Prudential Equity Group, LLC ("Prudential") to provide brokerage services. Within a few months the Sahni Clients sustained losses of $21 million. The Sahni Clients believed the losses were a result of negligence, breach of fiduciary duty, unsuitable trading, lack of supervision and other violations of the securities laws.

5. In or about April 16, 2002, the Sahni Clients consented to submitting their claims to binding arbitration. Prudential entered into a similar agreement in or about June 2002.

6. Upon information and belief, in or about August 2001, the Sahni Clients consulted Kroll, Moss & Kroll, LLP, ("Kroll Firm") regarding the aforementioned losses. The Sahni Clients retained the Kroll Firm.

7. The Kroll Firm performed very little work on the Sahni Client matter and in March 2002, the firm received an offer of approximately $225,000 for a $22 million claim. Martin Kroll suggested they accept the settlement offer.

8. The Sahni Clients were extremely unhappy with their representation by the Kroll Firm and, shortly thereafter, the Sahni Clients notified the firm they were terminating their services.

9. On or about April 1, 2002, the Sahni Clients retained Plaintiff, Robert H. Weiss & Associates, P.C., to prosecute their claim against Prudential. The Sahni Clients agreed to pay plaintiff 30% of any recovery as a legal fee. Plaintiff agreed to pay any legal fee owed to the Kroll firm out of his 30% share. However, neither the Sahni Clients nor Mr. Weiss believed that Kroll was entitled to any legal fee based upon his failure to properly and timely prosecute the Sahni Clients' claim.

10. Plaintiff immediately began to proceed with drafting a complaint and within three weeks a NASD complaint was filed on behalf of the Sahni Clients.

11. In or about the fall of 2001, Mr. Weiss fortuitously met defendant Thomas Ajamie, Esq. for the first time at a PIABA (Public Investors Arbitration Bar Association Meeting) meeting in Florida. The two men became reacquainted at the next

annual PIABA meeting in Colorado during the fall of 2002. At the Colorado meeting, Mr. Weiss mentioned the Sahni case and informally inquired if Mr. Ajamie might be interested in acting as co-counsel with Mr. Weiss. This was only a preliminary discussion and no agreement was reached regarding Mr. Ajamie joining Mr. Weiss as co-counsel.

12. Mr. Weiss and Mr. Ajamie spoke on the telephone a number of times. In October 2002, Mr. Ajamie came to New York and he orally agreed with Mr. Weiss upon a co-counsel arrangement in which they agreed that they would each receive 50% of any legal fee recovered and each party would be equally responsible for the costs of the law suit. Mr. Ajamie never mentioned that he would retain additional trial counsel, outside his firm, to assist in the case or Arbitration.

13. Sometime shortly thereafter, Mr. Weiss spoke to the Sahni Clients and asked permission to allow defendants to act as co-counsel. Mr. Weiss explained to the Sahni Clients that he would continue to work on the case as co-counsel and he would remain responsible, with defendants, for their case. The Sahni Clients authorized Mr. Weiss to bring in Mr. Ajamie as co-counsel. Mr. Ajamie never applied to be admitted *pro hace vice* in New York even though he would be providing legal services in New York.

14. Defendant Ajamie drafted a letter to serve as a fee-sharing agreement ("Fee Agreement") memorializing the parties' previous discussions and he forwarded it to Mr. Weiss. The parties' letter agreement was executed in October 2002. Mr. Ajamie stated in the letter Fee Agreement that:

> This letter sets forth our agreement to work together on behalf of the Sahni Clients. We will jointly

> represent the Sahni Clients in connection with their
> securities claims . . .
>
> **We will work with you** on behalf of the Sahni
> Clients in preparing and presenting their claims . . .
>
> You have consulted the Sahni Clients and you
> represent to us that they are aware of our participation in
> the matter and consented to it. (emphasis added.)

15. Plaintiff continued to work on the Sahni Clients' case with defendants. In or about February 2004, defendant Ajamie drafted an amendment to the parties' original Fee Agreement. This amended agreement changed the proportion of the percentages that each party would receive of the fees derived from the settlement. Plaintiff's percentage was reduced to 34% and defendant's percentage was increased to 66%. The parties executed the agreement on or about February 16, 2004 in Florida ("Amended Fee Agreement").

16. Plaintiff agreed in the Amended Fee Agreement to pay from his share of the legal fee, any fees owed to law firms who had a claim for fees for a prior representation of the Sahni Clients. This provision was in response to the parties' conversation about any claim the Kroll firm may assert. There was no discussion that any other claims by other attorneys retained in the future would be covered by this provision and defendant never mentioned his intention of retaining other counsel to assist him. To the contrary, Mr. Ajamie gave the clear impression that he, with the help of Mr. Weiss, would handle the Sahni Clients' Arbitration. This was the precise reason that Mr. Weiss agreed to the amendment to the original fee agreement.

17. At some point in late 2003 early 2004, defendant began to cut off information going to Mr. Weiss and stopped returning Mr. Weiss's telephone calls.

Notwithstanding defendant's obstreperous attitude towards Mr. Weiss, Mr. Weiss continued to participate in the Sahni Clients' representation. He attended numerous Arbitration sessions as co-counsel.

18. At some time after the Arbitration started, Mr. Weiss believed he was being completely shut out of the Sahni Client case and defendants were attempting to interfere with his attorney-client relationship with the Sahni Clients. Many phone calls went unreturned. Mr. Ajamie as "lead counsel" precluded Mr. Weiss from contributing to the case. Mr. Weiss could not obtain the cooperation of Mr. Ajamie and Mr. Weiss stopped appearing at the Arbitration. Mr. Ajamie never requested or even suggested that Mr. Weiss continue attending the Arbitration. To the contrary, he gave every indication that he did not want Mr. Weiss present.

19. Mr. Weiss concluded that Mr. Ajamie was cutting Mr. Weiss out of the Sahni Clients case. Consequently, Mr. Weiss served a charging lien on Prudential and Prudential's counsel regarding the Sahni Clients' case because he was afraid Mr. Ajamie was scheming to cut him out of the legal fee to which the parties had previously agreed.

20. At some point thereafter, defendant retained the services of John Moscow, Esq., to participate in the Arbitration, who was affiliated at the time with Rosner, Moscow & Napierala, LLP, and who was not a member of defendants' firm, to act as additional co-counsel. Mr. Ajamie did not seek permission from plaintiff or the Sahni Clients to utilize Mr. Moscow's services.

21. On or about May 18, 2006, an Arbitration Panel awarded the Sahni Clients $11.8 million, plus interest.

22. After the Arbitration Panel rendered their award, Mr. Ajamie, without consulting Mr. Weiss, or receiving permission from the Sahni Clients, retained Robert Kraus, who is not a member or employee of Mr. Ajamie's firm, to submit a motion to confirm the award. Mr. Ajamie was not, and is not, admitted to practice law in New York and could not file the motion. Nonetheless, upon information and belief, Mr. Ajamie participated in the appeal.

23. The Arbitration award was confirmed and the Sahni Clients have received their share of the settlement monies, minus the legal fees, when Prudential gave their settlement monies to Richard Carmen, Esq., the Sahni Clients' recently-retained New York Counsel. The Sahni Clients were forced to retain additional New York counsel because defendants claimed Prudential would only tender the money to their firm in Texas by depositing the money into the firm's Texas IOLTA account. This was contrary to the clients' wishes and was proved false when the monies were tendered to Mr. Carmen's New York IOLA account.

24. Upon information and belief, the balance of the settlement monies, constituting legal fees and expenses, which is the sole focus of this law suit, is currently being held by Prudential's counsel in a New York bank ("Fee Monies").

25. Defendants explicitly repudiated the parties' Amended Fee Agreement when defendants recently sued plaintiff in Texas to seek to have a Texas court hold that defendants could renege on the parties' fee agreement.

26. Mr. Weiss has moved to dismiss the Texas action because the court has no personal or subject matter jurisdiction with respect to the parties' dispute. Mr. Weiss claims that: the underlying misconduct by Prudential against the Sahni Clients took place

in New York; defendants agreed to provide legal services in New York and performed said services in New York; the fees in dispute are for work defendants performed in a New York NASD Arbitration; the Sahni Clients retained Mr. Weiss in New York through whom Mr. Ajamie became co-counsel; the Sahni Clients are located in New York; the Amended Fee Agreement in question was agreed to in principal in New York; the Fee Monies in dispute are being held in New York by Prudential's counsel or may be deposited with a New York court; and all pertinent witnesses (except Mr. Ajamie) are in New York.

## FIRST CAUSE OF ACTION

(Breach of Contract)

27. Plaintiffs repeat and re-allege every allegation contained in paragraphs 1 through 26 as is fully set forth herein.

28. Defendants have denied plaintiffs their portion of the legal fees from the Sahni settlement by repudiating the parties' Amended Fee Agreement when defendants claimed in a Texas law suit that the parties' agreement is unenforceable and plaintiffs should not receive any portion of the legal fees in the Sahni matter.

29. Defendants have breached the parties Amended Fee Agreement and plaintiffs have been damaged thereby in an amount equal to 34% of the legal fees from the Sahni settlement plus interest.

## SECOND CAUSE OF ACTION

(Denial of Fees for the Unauthorized Practice of Law)

30. Plaintiffs repeat and re-allege every allegation contained in paragraphs 1 through 29 as is fully set forth herein.

### THIRD CAUSE OF ACTION

(Tortious Interference with the Attorney-Client Relationship
and the Violation of Good Faith and Fair Dealing)

35. Plaintiffs repeat and re-allege every allegation contained in paragraphs 1 through 34 as is fully set forth herein.

36. Defendants refused to allow Mr. Weiss to participate in the representation of the Sahni Clients after the completion of a few Arbitration sessions. This obstreperous conduct was an attempt to interfere with the attorney-client relationship between plaintiffs and the Sahni Clients.

37. Defendants' conduct was part of the defendants' scheme to cut plaintiffs out of any portion of the legal fee to which plaintiffs were entitled, pursuant to the parties' Amended Fee Agreement.

38. This scheme culminated in defendants bringing a law suit in Texas regarding the parties' fee dispute simply to harass plaintiffs when there was absolutely no basis whatsoever to commence an action in that jurisdiction.

39. Defendants' conduct constitutes a scheme that violated plaintiff's duty of good faith and fair dealing under the parties' Amended Fee Agreement.

40. Due to this misconduct, Mr. Ajamie violated the parties' Amended Fee Agreement in bad faith and defendants should be denied any portion of the fee monies from the Sahni settlement and plaintiffs should be granted all of the Fee Monies being held by Prudential's counsel as legal fees in the Sahni matter.

## FOURTH CAUSE OF ACTION

(Enforcement of Charging Lien)

41. Plaintiffs repeat and re-allege every allegation contained in paragraphs 1 through 40 as is fully set forth herein.

42. When defendants began the process of systematically cutting out plaintiffs from their participation in the Sahni Clients matter plaintiff was forced to assert a charging lien in writing, by letter dated Feb 23, 2004, pursuant to Judiciary Law § 475.

43. As alternate relief, plaintiff seeks to enforce the aforementioned charging lien.

## FIFTH CAUSE OF ACTION

(Declaratory Judgment)

44. Plaintiffs repeat and re-allege every allegation contained in paragraphs 1 through 43 as is fully set forth herein.

45. Defendants have repudiated their parties Amended Fee Agreement and, thereby, refused to give Prudential and their counsel the authorization to distribute 34% of the Fee Monies to plaintiff.

46. Prudential's counsel will not release these monies unless and until the defendants authorize said release.

47. Each party is claiming a right to all or, at minimum, a portion of the Fee Monies, but each party refuses to authorize the release of any part of the Fee Monies.

48. Due to these conflicting interests, plaintiff pleads, in the alternative, for a Declaratory Judgment finding that: defendants are not entitled to any portion of the Fee Monies and the entire amount of monies held by Prudential should be tendered to

plaintiff; or, in the alternative, the parties' Amended Fee Agreement should be enforced and Prudential's counsel should tender to plaintiff 34% of the fee monies, plus expenses and interest.

WHEREFORE, plaintiffs demand judgment:

    i.    Denying defendants any legal fee and granting plaintiff the right to receive the entire legal fee owed under the Sahni Clients' retainer agreement and in possession of Prudential; or

    ii.    Enforcing the parties' Amended Fee Agreement and granting plaintiff 34% of all legal fees owed and expenses under the Sahni Clients' retainer agreement; or, in the alternative,

    iii.    Issuing a Declaratory Judgment ordering that:

        a) the entire Sahni legal fee be tendered to plaintiff; or,

        b) the parties' Amended Fee Agreement be enforced and 34% of the Sahni Clients' legal fee, plus expenses, be tendered to plaintiff; or

    iii.    Granting any further or different relief deemed fair, just and equitable including interest, costs, and disbursements of this action and reasonable attorney fees.

Dated:    April 26, 2007
          New York, New York

_____
Richard M. Maltz, Esq.
Attorney for Plaintiff

RICHARD M. MALTZ, PLLC
488 Madison Avenue - 10th Flr.
New York, NY 10022
(212) 705-4804
(347) 438-2087

Index No.                     Year 20 07

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Robert H. Weiss and Robert H. Weiss &
Associates, P.C.
                    Plaintiffs,
        -against-

Thomas R. Ajamie, and Ajamie LLP and
Schirrmester Ajamie
                    Defendants.

## SUMMONS AND VERIFIED COMPLAINT

**RICHARD M. MALTZ, PLLC**
*Attorney for*
488 MADISON AVENUE
9TH FLOOR
NEW YORK, NEW YORK 10022
(212) 705-4804

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

Dated: 4/21/07            Signature _____

                          Print Signer's Name  Richard M. Maltz

Service of a copy of the within                                    is hereby admitted.

Dated:

                          Attorney(s) for

PLEASE TAKE NOTICE

☐ NOTICE OF ENTRY
that the within is a (certified) true copy of a
entered in the office of the clerk of the within named Court on                    20

☐ NOTICE OF SETTLEMENT
that an Order of which the within is a true copy will be presented for settlement to the
Hon.                          one of the judges of the within named Court,
at
on                    20     , at         M.

Dated:

**RICHARD M. MALTZ, PLLC**
*Attorney for*
488 MADISON AVENUE