Richard M. Maltz (RM 5627)
RICHARD M. MALTZ, PLLC
488 Madison Avenue
New York, NY 10022
Phone: (212) 705-4804
Fax: (347) 438-2087

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

PRUDENTIAL EQUITY GROUP, LLC

Plaintiff,

-against –

DECLARATION OF
RICHARD M. MALTZ

07 CV 5606 (JSR)

THOMAS R. AJAMIE, AJAMIE LLP, ROBERT WEISS, ROBERT H. WEISS & ASSOCIATES, LLP, JOHN MOSCOW, BRIAN ROSNER, ROSNER NAPIERALA LLP, DAVID ROBBINS, KAUFMANN FEINER YAMIN GILDIN & ROBBINS, LLP, WALLACE SHOWMAN, BERNSTEIN LITOWITZ BERGER & GROSSMAN LLP, ROBERT KRAUS, KRAUS & ZUCHLEWSKI LLP, MARTIN KROLL, KROLL, MOSS & KROLL LLP, JOHN DOES 1-25 AND ABC CORPORATIONS 1-25,

Defendants.
-----------------------------------------------------------------------X

I, Richard M. Maltz, deposes and states:

1. I am an attorney admitted to practice law in the State of New York and before this Court.

2. I represent defendants Robert H. Weiss, Esq. and Robert H. Weiss Associates, LLP, ( collectively "Weiss") with respect to the Order to Show Cause filed by plaintiff, Prudential Equity Group, LLC, which seeks permission to Deposit Funds with this Court that are the subject of a dispute by some, or all, of the above named defendants; to file an Interpleader action, pursuant to U.S.C. § 1335; to restrain defendants from instituting or maintaining any action against plaintiff; to award costs and attorney's fee incurred in this action; or to grant any further relief as may be just.

3. In short, Weiss has no objection to plaintiff's Order to Show Cause and the relief sought in plaintiff's Interpleader complaint, with one exception. Weiss contends that defendant Thomas R. Ajamie's actions in the District Court, Harris County, Texas, referenced in plaintiff's moving papers, was the motivating force behind plaintiff bringing the instant Interpleader action and the related Order to Show Cause. Consequently, Weiss contends that any fees or costs paid to plaintiff's counsel should be taxed against Ajamie and not the res, which is their subject of this Interpleader.

**Background**

4. In or about February 2000, Charanjit Sahni, Harpreet Sahni, Nasimang Enterprises, AVV/Nasimang Trust by Nand Sahni and Charanjit Sahni; Charanjit Sahni Custodian Angad Sahni Utma; and Charanjit Sahni Custodian Simran Sahni Utma (collectively "Sahni Clients") tendered $23 million to Prudential Equity Group, LLC ("Prudential") to provide brokerage services. Within a few months the Sahni Clients sustained losses of $21 million. The Sahni Clients believed the losses were a result of negligence, breach of fiduciary duty, unsuitable trading, lack of supervision and other violations of the securities laws.

5. In or about April 16, 2002, the Sahni Clients consented to submitting their claims to binding arbitration. Prudential entered into a similar agreement in or about June 2002.

6. Upon information and belief, in or about August 2001, the Sahni Clients consulted Kroll, Moss & Kroll, LLP, ("Kroll Firm") regarding the aforementioned losses. The Sahni Clients retained the Kroll Firm.

7. The Sahni Clients were unhappy with their representation by the Kroll Firm and, shortly thereafter, the Sahni Clients notified the firm they were terminating their services.

8. On or about April 1, 2002, the Sahni Clients retained Robert H. Weiss & Associates, P.C., to prosecute their claim against Prudential. The Sahni Clients agreed to pay Mr. Weiss 30% of any recovery as a legal fee pursuant to a written retainer agreement.

9. Mr. Weiss filed a NASD complaint on behalf of the Sahni Clients within three weeks.

10. In or about the fall of 2001, Mr. Weiss fortuitously met defendant Thomas Ajamie, Esq. for the first time at a PIABA (Public Investors Arbitration Bar Association Meeting) meeting in Florida. The two men became reacquainted at the next annual PIABA meeting in Colorado during the fall of 2002. At the Colorado meeting, Mr. Weiss mentioned the Sahni case and informally inquired if Mr. Ajamie might be interested in acting as co-counsel with Mr. Weiss.

11. Mr. Weiss and Mr. Ajamie spoke on the telephone a number of times. In October 2002, Mr. Ajamie came to New York and he orally agreed with Mr. Weiss upon

a co-counsel arrangement in which they agreed that they would each receive 50% of any legal fee recovered and each party would be equally responsible for the costs of the law suit. Mr. Ajamie never mentioned that he would retain additional trial counsel, outside his firm, to assist in the case or with the NASD arbitration that was to be conducted in New York.

12. Sometime shortly thereafter, Mr. Weiss spoke to the Sahni Clients and asked permission to allow Ajamie to act as co-counsel. Mr. Weiss explained to the Sahni Clients that he would continue to work on the case as co-counsel and he would remain responsible, with defendants, for their case. The Sahni Clients authorized Mr. Weiss to bring in only Mr. Ajamie as co-counsel. Mr. Ajamie never applied to be admitted *pro hac vice* in New York.

13. Ajamie drafted a letter to serve as a fee-sharing agreement ("Fee Agreement") memorializing Weiss and Ajamie's previous discussions and he forwarded it to Mr. Weiss. The parties' letter agreement was executed in October 2002. Mr. Ajamie stated in the letter Fee Agreement that:

> This letter sets forth our agreement to **work together** on behalf of the Sahni Clients. We will **jointly represent** the Sahni Clients in connection with their securities claims . . .
>
> **We will work with you** on behalf of the Sahni Clients in preparing and presenting their claims . . .
>
> You have consulted the Sahni Clients and you represent to us that they are aware of our participation in the matter and consented to it. (emphasis added.)

14. Mr. Weiss continued to work on the Sahni Clients' case with Ajamie. In or about February 2004, Ajamie drafted an amendment to the parties' original Fee

Agreement. This amended agreement changed the proportion of the percentages that each party would receive of the fees derived from the settlement. Mr. Weiss's percentage was reduced to 34% and Ajamie's percentage was increased to 66%. The parties executed the agreement on or about February 16, 2004 in Florida ("Amended Fee Agreement").

15. At some time after the Arbitration started, Mr. Weiss believed he was being completely shut out of the Sahni case and Ajamie was attempting to interfere with his attorney-client relationship with the Sahni Clients. Many phone calls by Mr. Weiss's office went unreturned. Mr. Ajamie as "lead counsel" precluded Mr. Weiss from contributing to the case.

16. Mr. Weiss concluded that Mr. Ajamie had cut Mr. Weiss out of the Sahni case. Consequently, Mr. Weiss served a notice of a Charging Lien on plaintiff and plaintiff's counsel regarding the Sahni Clients' case. During the course of Arbitration and thereafter, Ajamie retained all of the co-defendants herein, other than Mr. Kroll, to work with him. Upon information and belief, he never sought prior permission of Mr. Sahni and never informed Mr. Weiss. When Mr. Weiss brought Ajamie in as co-counsel, Ajamie never mentioned his intent to seek the assistance of other counsel. Upon information and belief, no defendants, including Ajamie, executed a written retainer with the Sahni Clients other than Weiss and Kroll.

17. On or about May 18, 2006, an Arbitration Panel awarded the Sahni Clients $11.8 million, plus interest.

18. The Arbitration award was confirmed and the Sahni Clients have received their share of the settlement monies, minus legal fees, when Prudential gave their

settlement monies to Richard Carmen, Esq., the Sahni Clients' recently-retained New York Counsel. The Sahni Clients were forced to retain additional New York counsel because Ajamie claimed plaintiff would only tender the money to their firm in Texas by depositing the money into the firm's Texas IOLTA account. This was contrary to the Sahnis' wishes and was proved false when the monies were deposited in Mr. Carmen's New York IOLA account.

19. Shortly thereafter, Ajamie explicitly repudiated his Amended Fee Agreement with Weiss when he sued Weiss in a District Court in Harris County, Texas. Mr. Weiss has moved to dismiss the Texas action because the court has no personal or subject matter jurisdiction with respect to the parties' dispute. Mr. Weiss claims that: the underlying misconduct by Ajamie against the Sahni Clients took place in New York; Ajamie agreed to provide legal services in New York; the fees in dispute are for work defendants performed in a New York NASD Arbitration; the Sahni Clients retained Mr. Weiss in New York through whom Mr. Ajamie became co-counsel; the Sahni Clients are located in New York; the Amended Fee Agreement in question was agreed to in principal in New York; and the Fee Monies in dispute are being held in New York by plaintiff.

**Weiss's Current State Court Action**

20. Weiss filed an action in Supreme Court, New York County, on April 30, 2007 in response to Ajamie's refusal to comply with his agreement. (A copy of the summons and complaint are annexed as Exhibit A)

21. Ajamie and his Texas counsel have refused to accept service of Weiss's summons and complaint. In fact, upon information and belief, the receptionist at Ajamie's current law firm has assisted Ajamie in avoiding personal service.

22. Weiss has recently served Ajamie by "nail-and-mail," which will become moot if plaintiff's Interpleader action goes forward.

**Plaintiff's Attorneys Fees and Costs**

23. Plaintiff had received permission by defendant Weiss and all other known claimants to hold the money in dispute, without interest, until the parties resolved their dispute or plaintiff determined to deposit the money in Court. (*See,* Exhibit B)

24. While plaintiff was holding the money, Weiss proposed to Ajamie's counsel that Ajamie agree to the transfer of the money into an interest-bearing account in New York until the fee dispute was resolved by negotiation or litigation. (*See*, Exhibit C) Ajamie responded to this request by amending the action in Texas to force plaintiff to pay the money to a Texas Court.

25. Although plaintiff could have moved to deposit the money in court at any time, it would appear that Ajamie's refusal to cooperate with co-defendant Weiss and his attempt to force plaintiff to tender the disputed fees to Texas that instigated this Interpleader action.

26. As a result, Weiss contends that if this Court grants plaintiff's request for fees and expenses that Ajamie be deemed responsible for said costs and that the money not be taken from the res that will be deposited with the Court

* * * * * *

Wherefore, Weiss has no objection for the Court granting the relief plaintiff seeks in its Order to Show Cause including: depositing the pertinent monies with this Court, and enjoining any party from commencing or maintaining any other actions for said

money. However, to the extent fees and costs are allowed, Weiss respectfully requests the Court deem Ajamie responsible for said fees and expenses; or, grant any further or different relief this Court deems fair, just or equitable.

I swear under the penalty of perjury that the foregoing is true to the best of my knowledge except as pleaded upon information and belief.

Dated: New York, New York
June 19, 2007

RICHARD M. MALTZ