UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRUDENTIAL EQUITY GROUP, LLC,

                   Plaintiff,

      v.

THOMAS R. AJAMIE, AJAMIE LLP, ROBERT WEISS, ROBERT H. WEISS & ASSOCIATES, LLP, JOHN MOSCOW, BRIAN ROSNER, ROSNER NAPIERALA LLP, DAVID ROBBINS, KAUFMANN FEINDER YAMIN GILDIN & ROBBINS, LLP, WALLACE SHOWMAN, BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP, ROBERT KRAUS, KRAUS & ZUCHELEWSKI LLP, MARTIN KROLL, KROLL, MOSS & KROLL LLP, JOHN DOES 1-25, AND ABC CORPORATION 1-25,

                   Defendants.

No. 07-CV-5606 (JSR)

**MEMORANDUM OF LAW OF THOMAS R. AJAMIE AND AJAMIE LLP IN OPPOSITION TO PRUDENTIAL'S MOTION FOR ATTORNEYS' FEES.**

LAW OFFICES OF ERIC J. GRANNIS
*Attorneys for Plaintiff*
620 Fifth Avenue
New York, New York 10020
Tel.: (212) 903-1025

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................2

PRELIMINARY STATEMENT .........................................................................................3

FACTUAL STATEMENT ..................................................................................................3

ARGUMENT.......................................................................................................................4

I. ANY AWARD OF ATTORNEYS' FEES SHOULD BE REDUCED BY INTEREST PRUDENTIAL EARNED ON THE FUNDS........................................................................4

II. PRUDENTIAL'S ATTORNEYS' FEES REQUEST IS EXCESSIVE. .............................6

III. RESPONSIBILITY FOR PRUDENTIAL'S FEES. ........................................................10

    A. The Attorneys' Fees Should Be Awarded Against The Fund......................................10

    B. Any Consideration of Apportioning Fees to a Particular Claimant Should Be Postponed......................................................................................................................11

    C. If the Court Seeks to Apportion the Attorneys Fees Against a Particular Claimant, Weiss is the Claimant Against Whom Fees Should be Assessed. ................................12

CONCLUSION..................................................................................................................14

# TABLE OF AUTHORITIES

## CASES

Chemical Bank v. Richmul Associates, 666 F. Supp. 616 (S.D.N.Y. 1987).................................. 7

Chemical Bank v. Richmul Associates, 666 F. Supp. 616 (S.D.N.Y., 1987)................................. 8

Estate of Ellington v. EMI Music Publishing, 282 F. Supp. 2d 192 (S.D.N.Y. 2003) ............. 7, 11

Ferber Co. v. Ondrick, 310 F.2d 462 (1st Cir. 1962)...................................................................... 7

Globe Indemnity Co. v. Puget Sound Co., 154 F.2d 249 (2d Cir. 1946)............................. 6, 11, 12

GOAT, Inc. v. Four Finger Art Factory, Inc., 2002 WL 31684400 (S.D.N.Y. 2002).................... 8

Hoffman v. Toms, 2000 WL 246408 (S.D.N.Y. Mar.3 2000).......................................................... 8

Id.  In Klein v. Rhoades, 2000 WL 777906 (S.D.N.Y. 2000) ........................................................ 5

John Hancock Mutual Life Insurance Co. v. Doran, 138 F. Supp. 47 (S.D.N.Y. 1956) ............ 6, 7

Johnson v. Electrolux Corp., 763 F. Supp. 1181 (D. Conn. 1991) ................................................. 8

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Clemente, 2001 WL 536929 (S.D.N.Y. 2001)..... 8

Noeller v. Metropolitan Life Ins. Co., 190 F.R.D. 202 (E.D. Tex. 1999) ...................................... 7

Prudential Ins. Co. of America v. Boyd, 781 F.2d 1494 (11th Cir. 1986).................................... 11

Septembertide Publishing, B.V. v. Stein and Day, Inc., 884 F.2d 675 (2d Cir. 1989)....... 5, 10, 11

Trustees of the Directors Guild of America v. Tise, 234 F.3d 415 (9th Cir. 2000)........................ 7

Defendants Thomas Ajamie and Ajamie LLP (the "Ajamie Defendants") submit this memorandum of law in opposition to the motion of Prudential Equity Group, LLC ("Prudential") for an award of attorneys' fees.

## PRELIMINARY STATEMENT

The amount of attorneys' fees that Prudential seeks is unreasonable for several reasons.

First, Prudential likely earned about $75,000 on the funds it held prior to depositing them in the interpleader. This interest should be offset against any claim for attorneys' fees, particularly since the claim is based on equitable principals.

Second, the attorneys' fees that Prudential claims are excessive. Courts have repeatedly noted that attorneys' fees granted in interpleader cases should be "modest" or "small." The fees Prudential claims are far out of line with the amounts that are typically awarded to stakeholders, particularly for cases as simple as this.

Finally, Prudential's fees should be paid out of the fund. If a particular claimant is to be held liable for the fees, that determination should be made at the conclusion of the case when a fuller record exists. Moreover, if any claimant should be held liable for Prudential's fees, it is Robert Weiss.

## FACTUAL STATEMENT

This interpleader arises out of the attorneys' fees generated when the Ajamie Defendants successfully represented the Sahni family in a securities arbitration against Prudential. The Ajamie Defendants worked as lead counsel on the Sahnis' case for about 4 ½ years. They were assisted in various tasks by Wallace Showman, John Moscow, David Robbins,

- 3 -

and Robert Kraus.  An arbitration panel of the New York Stock Exchange issued an award in favor of the Sahni family in May 2006 in the amount of $11.8 million, plus interest.

The award was confirmed by an order of the New York State Supreme Court on December 15, 2007.   Under their attorneys' representation agreement, the Sahnis were entitled to 70% of the award, and their attorneys to 30%.  Prudential disbursed the Sahnis' portion of the award on April 3, 2007.  Prudential held the 30% attributable to attorneys' fees until June 12, 2007, when Prudential interpled the funds into the registry of the Court.

The underlying facts are more thoroughly decribed in the Declaration of Thomas R. Ajamie, to which the Ajamie Defendants refer the Court.

## ARGUMENT

I. ANY AWARD OF ATTORNEYS' FEES SHOULD BE REDUCED BY INTEREST PRUDENTIAL EARNED ON THE FUNDS.

Prudential presents itself to the Court as a beleaguered victim that has had to incur substantial attorneys' fees as the result of a dispute over funds that it held.  This portrait is inaccurate in one quite important respect – the conflict had a silver lining for Prudential.  The dispute enabled Prudential to hold onto the funds from the Sahni arbitration award for months without paying interest. From March 9th until April 3rd, 2007, it held nearly $15 million without paying any interest thereon.  Prudential thus avoided paying the Sahnis and their attorneys $40,940.13 in interest during this period.  Then from April 3rd until June 12th, Prudential held approximately $4.5 million, again paying no interest thereon.  This saved Prudential approximately $34,389.71 in interest expense. Ajamie Decl. ¶ 37.   Prudential therefore saved a total of about $75,329.84 in interest.

Wherever Prudential held those funds, it undoubtedly earned a return on them.  Prudential is a sophisticated financial institution.  It does not put its cash under a mattress – it

collects interest on its funds.  Assuming that Prudential earned even a 4% rate of interest, which is standard for a money market these days, it earned about $75,000 on these funds.  This equals nearly all of the attorneys' fees that Prudential claims and is larger than the attorneys' fees that are reasonable and justified.

Prudential will no doubt protest that the Defendants agreed no interest would run on the funds at issue after March 9, 2007.  This is true.  But as shown by the Declaration of Thomas R. Ajamie, the Ajamie Defendants needed to assure that the dispute over attorneys' fees did not delay distribution of the Sahni family's funds.  Ajamie Decl. ¶ 17.   As a condition to distributing the Sahnis' portion of the award, Prudential required an agreement that interest would cease to accrue on the entire award from and after March 9, 2007.  *Id.* at ¶ 18.  As a result of this arrangement, Prudential arguably has no legal obligation to pay interest.   However, what is before the Court is a claim for attorneys' fees on an interpleader action, and that claim is equitable in character.  *See Septembertide Publishing., B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 682 (2d Cir. 1989).  The Court can and should, therefore, consider the fact that Prudential, while incurring certain out-of-pocket costs, was simultaneously receiving benefits that effectively diminished – or eliminated entirely – the net amount of these out-of-pocket expenses.

Courts have frequently ordered stakeholders to pay interest on interpleaded funds.  In *Septembertide Publishing,* a case cited by Prudential, there had been a delay in paying the fund proceeds into the Court.  Although the Court noted that the stakeholder was "not responsible for the delay in paying the money into court" it nonetheless ordered the stakeholder to pay interest at 5% on the funds as the stakeholder's claim was equitable in nature.  *Id.*  In *Klein v. Rhoades*, 2000 WL 777906, (S.D.N.Y. 2000), the Court – citing *Septembertide* – ordered the stakeholder to pay interest on an interpleaded amount that the stakeholder had held in

an interest bearing account. Similarly, in *John Hancock Mutual Life Insurance Co. v. Doran*, 138 F. Supp. 47 (S.D.N.Y. 1956), the Court conditioned its award of attorneys fees on the stakeholder paying over interest that it earned on the interpled funds. *CF. Globe Indemnity Co. v. Puget Sound Co.*, 154 F.2d 249, 251 (2d Cir. 1946) (where due to error of lower Court, part of fund was released to one claimant, claimant was required on appeal to turn over funds plus interest for the period during which claimant had use of funds).

In the instant case, the Ajamie Defendants are not requesting that Prudential be ordered to affirmatively pay interest. We do contend, however, that any interest Prudential earned should be offset against the attorneys' fees Prudential claims. Prudential is greatly exaggerating its net out-of-pocket costs by failing to take into account the benefits that it accrued from the use of the funds. As Prudential acknowledges, this Court has substantial discretion to determine the amount awarded as attorneys' fees. *See* Picon Decl. at ¶ 25 ("The Court has discretion to determine the appropriate amount of fees and expenses.") This Court can and should use that discretion to offset the interest Prudential received against the attorneys' fees that the Court awards to Prudential. If the Court does not do so, then Prudential could actually profit from the dispute over the funds, which is hardly the purpose of the equitable doctrine permitting a stakeholder to obtain legal fees. If Prudential refuses to disclose in its reply papers the amount of interest that it earned on the funds that it held, then it should be ordered to disclose this information prior to any award of attorneys' fees.

II.     PRUDENTIAL'S ATTORNEYS' FEES REQUEST IS EXCESSIVE.

The fees that Prudential has requested are excessive. A reasonable fee, given the simple questions at issue in an interpleader, is no more than $15,000 - and Prudential should not be awarded even this amount since the interest it earned on the fund vastly exceeds this amount.

It has generally been recognized that the fees reimbursed to a stakeholder who initiates an interpleader action should be modest. *See Trustees of the Directors Guild of America v. Tise*, 234 F.3d 415, 427 (9th Cir. 2000) (noting that attorneys' fee awards to the interpleader plaintiff "are typically modest" and that fee award of $3,000 was "in line with those commonly granted."); *Ferber Co. v. Ondrick*, 310 F.2d 462, 467 (1st Cir. 1962) ("by its very nature" the fee granted in an interpleader action "is of a relatively small amount, simply to compensate for initiating the proceedings"); *Chemical Bank v. Richmul Associates*, 666 F. Supp. 616, 619 (S.D.N.Y. 1987) ("fees granted are usually nominal"); *John Hancock Mutual Life Insurance Co. v. Doran,* 138 F. Supp. 47, 50 (S.D.N.Y. 1956) ("counsel fees to stakeholders, when awarded, should be kept small in recognition of the minimal work necessary to institute a suit in interpleader"); *John Hancock Mut. Life Ins. Co. v. Doran*, 138 F. Supp. 47, 50 (S.D.N.Y. 1956) (fees awarded should be kept small, both out of fairness to the eventual recipient of the fund and in recognition of the minimal work necessary to institute an action in interpleader); *Noeller v. Metropolitan Life Ins. Co.*, 190 F.R.D. 202, 206-07 (E. D. Tex. 1999) ("fee awarded typically will be modest").

Moreover, the instant proceedings have been reasonably simple. No party has opposed either the interpleader action or the order to show cause that Prudential filed along with that interpleader. In cases such as this in which the interpleader dispute was relatively brief, numerous courts have reduced requests for attorneys' fees and have awarded far smaller fees than Prudential seeks here . *See Estate of Ellington v. EMI Music Publishing,* 282 F.Supp.2d 192, 194-5 (S.D.N.Y. 2003) (requested fees of $37,000 reduced to $10,000 because "[w]hile the litigation has been acrimonious, it has not been complex, either legally or factually," as there was no "extensive litigation over the discharge, and [stakeholder] was not required to participate in

discovery"); *GOAT, Inc. v. Four Finger Art Factory, Inc.*, 2002 WL 31684400 at *2 (S.D.N.Y. 2002)(requested fees of $27,583.10 reduced to $7,000 because it was "not a case in which there was extensive litigation as to the discharge of the stakeholder or in which the stakeholder was required to participate in discovery before discharge."); *Hoffman v. Toms*, 2000 WL 246408, at *2 (S.D.N.Y. Mar.3, 2000) (awarding $4000 in attorneys' fees and calling amount sought "excessive given the simplicity of the task"); *Chemical Bank v. Richmul Associates*, 666 F. Supp. 616, 620 (S.D.N.Y.,1987) (requested fees of $26,570.44 reduced to $7357.16 because there "was no real complexity of [the] interpleader action, no significant discovery, and no extensive motion practice"); *Johnson v. Electrolux Corp.*, 763 F. Supp. 1181, 1189 (D. Conn.1991) (requested fees of $7,422.07 reduced to $1,000 where there was "no discovery and no complex legal research.").

Prudential has cited only a single case in its moving declaration in which the fees awarded were larger than those it seeks here. That case was an outlier in which the fees were particularly large because the proceedings were both lengthy and had an international dimension. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Clemente*, 2001 WL 536929, at *1 (S.D.N.Y. 2001) (noting that case required stakeholder to "serve six Defendant-Claimants in four countries; draft replies to counterclaims of the six Defendant-Claimants; draft motion papers in support of [stakeholder]'s motion for summary judgment; and undertake the necessary research, correspondence and other communications involved in the above tasks.")

Prudential's fees here are large because it needlessly complicated this matter. There was no need for a fourteen page complaint in this action. Prudential seems to have felt compelled to recount the entire history of the parties' discussions concerning the attorneys' fees portion of the fund. It would have been legally sufficient for Prudential to state in a few

- 8 -

paragraphs that it was holding the attorneys' fees portion of an award and that there were various attorneys who were claiming to be entitled to those fees. This would have been consistent with Fed. R. Civ. P. 8(a), which requires a short and plain statement, and quite adequate to inform the Defendants and the Court of the nature of Prudential's suit.

Similarly, there was no need for Prudential to seek an Order to Show Cause. Once Prudential filed its interpleader complaint, it could have simply waited to see whether the Defendants agreed to make all claims to the fund in this action. In fact, this is exactly what happened. There was no realistic possibility that any party could get a Court to enjoin a pending Federal proceeding nor would this Court have paid any attention to such an order if it had issued. In short, by seeking an Order to Show Cause, Prudential needlessly anticipated a problem that did not arise and that Prudential could have dealt with later if it had arisen. Thus, this work was entirely unnecessary. The total fees associated with the order to show cause are approximately $19,350. This should be subtracted from Prudential's proposed award.

In addition, an associate by the name of Elizabeth Figueira did unidentified "research on interpleader action and possible venues" and wrote up this research on May 18, 19, 20 and 21, 2007. Picon Aff. at Ex. A. Other than venue, what question Prudential's counsel had regarding interpleader actions is a mystery. As to the issue of venue in an interpleader action, the rule is hardly complex: venue is proper in any district in which any of the claimants resides. 28 U.S.C. § 1397. For this research, however, Prudential claims a total of $3,910.00. Moreover, Ms. Figueira did yet more "follow up research on jurisdictional requirements" on May 30, 2007, for which Prudential seeks an additional $476.00. All of these charges, which total $4386.00, should be subtracted from Prudential's proposed award.

Prudential also has charged for its time arranging for the dismissal of Bernstein Litowitz Berger and Grossman.  Prudential apparently sued Bernstein Litowitz because Wallace Showman is currently associated with that firm.  However, Mr. Showman was not associated with this firm at the time he did work on the Sahni case.  Bernstein Litowitz has never indicated that it would make a claim on the fund. Accordingly, it was unnecessary for Prudential to sue this firm.  The requested fees for dismissing Bernstein Litowitz, totaling $904.50, should not be awarded.

Similarly, Prudential's Texas counsel spent unnecessary time on the action there.  On June 11, 2007, Ms. Blanco spent eight hours preparing for and attending a special appearance in which the issue was whether Robert Weiss was subject to personal jurisdiction.  *See Blanco Affidavit* at Exhibit A.  The hearing itself was very brief, only 2 ½ hours.  Ajamie Decl. ¶ 34.  Ms. Blanco should not have required any preparation for the hearing since the issue at stake did not implicate Prudential's interests.   Accordingly, Ms. Blanco's fees of $4,200 for this hearing should be subtracted.

In addition, Prudential's Texas counsel has redacted many of its entries with no explanation as to the basis for the redaction.  Prudential should not be awarded fees for work that it refuses to disclose.  Moreover, since there is no indication of what portion of the total time entry is attributable to the redacted and unredacted portions of the entries, the entire entries must be disregarded.  These entries total $11,564.50.

III.     RESPONSIBILITY FOR PRUDENTIAL'S FEES.

    A.     The Attorneys' Fees Should Be Awarded Against The Fund.

When a stakeholder obtains fees in an interpleader action, they "are generally awarded against the interpleader fund itself, in the absence of misconduct on the part of one of the parties suggesting that they should bear such costs." *Septembertide*, 884 F.2d at 683; *accord*

*Prudential Ins. Co. of America v. Boyd*, 781 F.2d 1494, 1497-98 (11th Cir. 1986).  Thus, one party should not be held solely liable for fees unless it can be said that the party acted in bad faith or that the other parties bear no responsibility for the interpleader action.  *See Estate of Ellington v. EMI Music Publishing,* 282 F.Supp.2d 192, 195 (S.D.N.Y. 2003) (awarding fees against fund where it was "plain that all of the parties with a potential interest in the fund bear some responsibility for requiring [the stakeholder] to resort to the interpleader action as a means of resolving the claims to the fund."); *Prudential Ins. Co.*, 781 F.2d at 1497-98 (determining that attorneys' fees should not be taxed against claimant in absence of bad faith or misconduct).

In the instant case, an interpleader action exists not due to the fault of the Ajamie Defendants but simply because there are multiple claimants to the fund at issue.  Prudential suggests that the Ajamie Defendants are somehow to blame for having brought suit in Texas.  However, there has been no finding by the Texas Courts that any actions that the Ajamie Defendants took were frivolous.  The Ajamie Defendants reasonably brought suit in a forum in which nearly all of the work had been performed and which thus gave rise to the fund at issue.  The Texas action therefore does not provide any basis for awarding attorneys fees against the Ajamie Defendants.

  B.  Any Consideration of Apportioning Fees to a Particular Claimant Should Be Postponed.

If the court is to assess the stakeholder's fees against particular claimants, rather than the fund as a whole, the assessment is properly made at the conclusion of the proceeding.  *See Septembertide Publishing,* 884 F.2d at 678 (assessing stakeholder's costs and attorneys' fees in final judgment at conclusion of case); *Globe Indemnity Co. v. Puget Sound Co.*, 154 F.2d 249, 250-51 (2d Cir. 1946) (assessing stakeholder's fees against claimant who lost on the merits).  The Court can order that the fees be paid out of the fund at present and then, if appropriate,

impose the fees upon a particular party after final distribution of the fund. This would permit the Court to consider the complex issue of attributing the attorneys' fees to a particular party with the benefit of a full record and in light of the outcome in the interpleader action.

This delay would be beneficial because the Second Circuit has held that where a claimant is unsuccessful in its claim to an interpleader fund, the Court should consider ordering the unsuccessful party to reimburse the fund for the fees awarded to the stakeholder. *Globe Indem. Co.,* 154 F.2d at 249. The theory is that the fees "ought ultimately to be paid by the party whose claim has been adjudged groundless, and whose assertion of the claim necessitated the interpleader and thereby prevented the successful claimant from obtaining the fund undiminished by interpleader costs." *Id.* Accordingly, if it becomes apparent that in fact one of the parties, such as Robert Weiss, caused the interpleader to occur by asserting a baseless or excessive claim against the fund, this may either determine the allocation of fees or at least influence it. Accordingly, this Court will be in a better position to determine this allocation issue at the time of distribution than it is now and in any case will certainly be in no worse position.

C. If the Court Seeks to Apportion the Attorneys Fees Against a Particular Claimant, Weiss is the Claimant Against Whom Fees Should be Assessed.

The fund at issue in this case came into existence because the Ajamie Defendants successfully prosecuted the Sahni family's claims against Prudential. Even though Mr. Weiss agreed to share the work and expenses of the Sahnis' case, he did neither. Ajamie Decl. ¶¶ 9, 25b, 28,. Mr. Weiss's failure to pay his portion of the expenses caused Mr. Ajamie to bear the full brunt of expert witness fees and other expenses, an amount totaling approximately $550,000, none of which have been reimbursed. *Id.* at ¶ 28. This has caused an enormous burden on Mr. Ajamie and his firm.

For the past four years, Mr. Weiss's sole effort in the Sahnis' case involved his asserting his own, personal claim for a share of the attorneys' fees. *Id.* at ¶¶ 16, 17, 20, 25b. Mr. Weiss's charging lien resulted in Prudential's holding up distribution of the clients' award. It was Mr. Ajamie, not Mr. Weiss, who negotiated with Prudential to secure distribution of the clients' 70% of the award. *Id.* at ¶¶ 18-22. Mr. Weiss did not assist at all during the negotiations. *Id.* at ¶ 20. His only concern was his own claim to the fees. Indeed, Mr. Weiss's claim against Prudential caused Mr. Ajamie to spend significant time negotiating a release of the client's portion of the recovery. *Id.* at ¶¶ 17, 27.

Further, under the agreement between Mr. Ajamie and Mr. Weiss, Mr. Ajamie is to be reimbursed for all expenses before the attorneys' fees are divided. *Id.* at ¶ 28. Therefore, it is inequitable and contrary to the parties' agreement to assess Prudential's attorneys' fees against Mr. Ajamie. Instead, the equities dictate that if Prudential's fees are to be assessed against any claimant, they should be assessed against Mr. Weiss's portion (if any) of the funds on deposit with this Court.

## **CONCLUSION**

For the reasons stated above, Defendants Thomas Ajamie and Ajamie LLP respectfully request that the fees awarded to Prudential be no more than $15,000, that interest earned by Prudential be subtracted from that amount, and that Prudent be ordered to disclose the interest it earned on the funds it held to pay the Sahni award between March 9 and June 12, 2007 and/or the use Prudential put to the funds during this period.

Dated: New York, New York
       July 18, 2007

                                LAW OFFICES OF ERIC J. GRANNIS

                                By: *Eric Grannis*
                                    Eric J. Grannis           (EG8403)
                                    620 Fifth Avenue
                                    New York, New York 10020
                                    (212) 903-1025

                                Attorneys for Defendants Thomas Ajamie
                                and Ajamie LLP