UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
PRUDENTIAL EQUITY GROUP, LLC          :
:
              Plaintiff,             :
:
v.                                    :     07 CV 5606 (JSR)
:
THOMAS R. AJAMIE, AJAMIE LLP, ROBERT  :
WEISS, ROBERT H. WEISS & ASSOCIATES,  :     **REPLY DECLARATION**
LLP, JOHN MOSCOW, ROSNER NAPIERALA,   :     **OF DAVID A. PICON**
LLP, BRIAN ROSNER, DAVID ROBBINS,     :
KAUFMANN FEINDER YAMIN GILDIN &       :
ROBBINS, LLP, WALLACE SHOWMAN,        :
BERNSTEIN LITOWITZ BERGER &           :
GROSSMANN LLP, ROBERT KRAUS, KRAUS    :
& ZUCHLEWSKI LLP, MARTIN KROLL,       :
KROLL, MOSS & KROLL LLP, JOHN DOES 1- :
25 and ABC CORPORATIONS 1-25          :
:
              Defendants.            :
------------------------------------X

      DAVID A. PICON declares, under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct:

### PRELIMINARY STATEMENT

      1.    I am counsel to Prudential Equity Group, LLC ("PEG") in the above-referenced matter and submit this reply declaration to address the objections to PEG's attorneys' fee application proffered by defendants Thomas Ajamie and Ajamie LLP (collectively, "Ajamie"). Notably, <u>no other claimant</u> has submitted any substantive objection to PEG's application. To the contrary, defendants Robert Weiss and Weiss and Associates (collectively, "Weiss") and defendant Brian Rosner have advised the Court that they do not oppose PEG's right to recover the full amount of its fees, costs and disbursements. It is ironic that Ajamie – the party whose

gamesmanship exponentially increased the fees incurred – is now the only party to offer any objection to PEG's recovery of those fees.

2.     Ajamie advances two arguments in opposition to PEG's application, neither of which has any merit. First, he argues that PEG's fees should be offset by the interest it allegedly earned on the Fund during the period after which Ajamie agreed that interest would cease to run – a position that, on its face, contradicts his written agreement with PEG and which attempts to penalize PEG for accommodating Ajamie's repeated requests not to interplead the Fund. Second, Ajamie argues that PEG's fees were excessive and that PEG unnecessarily complicated this proceeding, a contention belied by the facts. *See also* Declaration of Richard Maltz, dated July 17, 2007, ¶¶ 9-10 (agreeing that PEG's actions in filing this proceeding were necessitated by Ajamie's conduct and arguing that, therefore, PEG's fees should be assessed against Ajamie).

### AJAMIE'S INTEREST ARGUMENT IS INCONSISTENT WITH HIS AGREEMENT

3.     Ajamie contends that, because PEG held the Fund rather than immediately interplead it, any fees should be "set off" by the interest Ajamie assumes PEG earned holding the Fund. Ajamie's contention, one not joined in by either Weiss or Rosner, conveniently neglects to mention certain critical facts which undermine it.

4.     What Ajamie fails to tell the Court is that, from the outset, I advised him that PEG would need to interplead the funds because Weiss had filed an attorneys' lien. Were PEG to pay Ajamie's clients (*i.e.*, the Sahni's) any amounts owing under the Award without Weiss' consent and various other protections, PEG could be subject to duplicative claims and liability. Thus, *solely* as an accommodation to Ajamie and Weiss, neither of whom wanted PEG to interplead the monies at issue into Court, PEG agreed to refrain from doing so and to allow Ajamie an

opportunity to obtain the written waivers from *all* potential claimants to the Fund to ensure that PEG would not be subject to such potentially duplicative exposure. Compl. ¶¶ 25-28.

5. Although Ajamie assured PEG that these written waivers would be forthcoming promptly, weeks went by without PEG receiving the necessary documents. In the meantime, interest on the $11 million judgment was continuing to run.[1] PEG naturally was not willing to incur further liability to the Sahnis or the Defendants because Ajamie could not provide PEG with the necessary assurances. Therefore, after numerous discussion on the subject, on or about March 9, 2007, PEG advised Ajamie in writing that unless he and his clients agreed that interest ceased to run on the judgment as of the previous day, PEG would interplead the judgment in New York state court, thereby stopping the interest clock and relieving itself of any further liability. *See* Exhibit A hereto. Ajamie and the Sahnis had a decision to make – and they chose to avoid interpleader by agreeing that interest would cease. Compl., Ex. E.

6. What Ajamie also ignores is that by agreeing not to interplead the funds, PEG continued to incur substantial attorneys' fees negotiating the terms of various agreements with the Defendants so as to provide PEG with the protections it needed outside of an interpleader action.[2] Of course, had Ajamie and the other Defendants not agreed to forego any further interest, PEG would have interpleaded the Fund in March 2007 and thus never incurred those fees, none of which are the subject of this attorneys' fee application. Moreover, at the same time, had Ajamie not opposed interpleader in March 2007, he could have sought to have the

---

[1] Critically, the total judgment (the 70% paid to the claimants, and the 30% making up the current interpleaded Fund) includes over $2 million in interest that had accrued through and including March 8, 2007.

[2] Attached as Exhibit B is a March 31, 2007 email from Ajamie to my colleague, Karen Coombs, assuring her that he continued to work on the issue of the 30% of the Fund attributable to attorneys' fees. Notably – and in stark contrast to his current litigation position – Ajamie's March 31 email (*i.e.*, written more than three weeks after Ajamie agreed interest would cease to run) recognizes PEG's need for protection and acknowledges that PEG has acted "quite professionally."

3

interpleaded monies placed in an interest-bearing account and received the interest for which he now seeks to be credited.

7.  Stated simply, now that Ajamie's agreement with PEG no longer serves his purposes, he asks this Court to ignore it and to offset the fees he caused PEG to incur by the interest he could have earned (both for himself and his client) had he simply agreed to interpleader at the outset. Respectfully, Ajamie wants to have his cake and to eat it too.

8.  The authority to which Ajamie cites (Ajamie Mem. of Law in Opp. at 5-6) is of no assistance to him. In *Septembertide Publishing, B.V. v. Stein & Day, Inc.*, 884 F.2d 775 (2d Cir. 1989), for example, the court did *not* impose interest on the stakeholder for the period prior to bringing the action, as Ajamie effectively seeks to have done here. Rather, in a case involving "rule interpleader" under F.R.C.P. 22, the court imposed interest on the interpleaded funds for the time period between when defendant filed its interpleader counterclaim and when it finally deposited the funds in court. *Id.* at 683-84. Here, of course, PEG deposited the Fund simultaneously with its initiation of this action. In any event, nothing in *Septembertide* (nor any other case for that matter) supports the imposition of interest where, as here, the claimants expressly agreed to forego interest, or where, as here, at least one claimant fought the filing of the interpleader.

9.  Nor could Ajamie contend that PEG unreasonably delayed its filing of this interpleader action – the key fact in another one of the cases upon which he relies. *John Hancock Mutual Life Ins. Co. v. Doran,* 138 F. Supp. 47, 50 (S.D.N.Y. 1956) (insurance company stakeholder's delay in pursuing the remedy of interpleader justified assessing interest for the period during which it could have, but did not, bring the action).[3] Here, as previously

---

[3] Ajamie's citation to *Klein v. Rhoades*, 2000 WL 777906 (S.D.N.Y. June 16, 2000) is mystifying. Although that action did involve interpleader, and while it did award attorneys' fees and costs to the stakeholder, there is no

4

explained, it was Ajamie and the other claimants who urged PEG not to commence an interpleader action and, ultimately, it was Ajamie himself who sought to interfere with PEG's bringing such an action.

## THE FEES PEG WAS REQUIRED TO INCUR ARE REASONABLE AND PROPER

### The Complexity of this Action is Entirely of Ajamie's Own Making

10.     Ajamie next contends that "an interpleader is a fairly simple proceeding" and that, therefore, the fees PEG incurred are excessive. Ajamie Decl. ¶ 35. PEG agrees that interpleader should be a simple proceeding. Regrettably, as the facts make clear, however, Ajamie did everything in his power to prevent this action from being simple, including taking steps to prevent PEG from even filing an interpleader action in this forum.

11.     As explained in my previous declaration, Ajamie filed suit against PEG in Texas and sought to compel PEG to deliver the Fund in that proceeding, despite not having joined all potential claimants to the Fund in that forum.[4] Over 80% of the attorneys' fees and costs PEG seeks in this application were incurred after Ajamie took these ill-advised actions, and most were incurred in response to them.

12.     Of course, Ajamie was the party who moved *ex parte* to prevent PEG from even initiating the action (Declaration of David Picon, dated July 3, 2007, Ex. B (Texas TRO)), a tactical maneuver that required PEG to retain Texas counsel, which, working with my firm, was required to file various motions and attend numerous hearings to obtain dissolution of the

---

reference in that opinion to interest being imposed on any party. Ajamie's description of the case is wrong. As to his citation to the 1946 decision in *Globe Indemnity Co. v. Puget Sound Co.*, 154 F.2d 249 (2d Cir. 1946), that case is inapposite. The deduction of interest was made as against one of the *claimants* to the interpleaded amount, who had received funds to which he was not entitled.

[4]     Ajamie's declaration is worded so as to suggest that PEG knew of the existence of his Texas lawsuit at the time it reserved to itself the right to interplead the Fund into court. Ajamie Decl. ¶ 30. That is simply not the case. PEG only learned of its existence sometime in May 2007. July 3, 2007 Declaration of David Picon, ¶¶ 11-12.

improper TRO. Given these facts, for Ajamie now to contend that "no party has opposed . . . the interpleader action" and that "there was no need for Prudential to seek an Order to Show Cause" (*see* Ajamie Mem. in Opp. at 7, 9) is just plain silly. Having sought to prevent PEG from even getting to the courthouse door and then, even after its TRO was dissolved, threatening to file additional claims against PEG were it to file an interpleader in this Court (*see* Declaration of Karen Coombs, dated June 12, 2007, ¶ 34), Ajamie's arguments ring hollow.[5]

13.   Nor can Ajamie claim that PEG has needlessly complicated this matter by naming lawyers with little or no interest in the funds. Ajamie Decl. ¶ 24. Every individual defendant PEG named either identified himself to PEG as asserting a claim to the Fund, or was identified by Ajamie or Weiss as such a potential claimant. Attached as Exhibit C is Ajamie's March 7, 2007 letter identifying six separate defendants as lawyers "with a lien and claim" on the Fund. Although Ajamie now contends that he has paid certain of those attorneys in full, he does not – and could not – contend that PEG was ever advised of that fact. It would have been a simple thing for Ajamie to so advise PEG at any time in the months before this action was filed. In any event, he certainly cannot blame PEG for naming these individuals as defendants here.

14.   Further, because it was not made clear to PEG whether the individual lawyers asserted these claims on their own behalf, on behalf of their firms, or both, PEG acted reasonably in naming the firms as well. Indeed, although Ajamie claims that defendant Wallace Showman's firm, Bernstein Litowitz, has no involvement with this matter (and thus PEG is not entitled to the

---

[5]   In none of the cases cited by Ajamie (Mem. in Opp. at 7-8) awarding only "modest" fees in interpleader actions was there an indication that interpleader was opposed, much less that the stakeholder was ever enjoined from initiating the action. Ajamie struggles to distinguish *Merrill Lynch, Pierce, Fenner & Smith, Inc. v Clemente*, 2001 WL 536929 (S.D.N.Y. May 21, 2001), awarding over $263,000 in fees, as an "outlier." But the present action was made at least as complex as the international service issues in *Merrill Lynch*, via Ajamie's conduct described above. Further, *Merrill Lynch* and its progeny provide support for considering the amount of interpleaded funds at issue in judging the reasonableness of fees. Here, of course, PEG has interpleaded well over $4 million, and seeks fees of less than $70,000 (approximately 1.5%).

fees incurred in negotiating its release), Mr. Showman's March 2007 communications with PEG in connection with PEG's agreement to delay interpleader were sent from that firm. *See* Exhibit D. The recent appearance of claimants Brian Rosner and Rosner Napierala LLP, claiming an interest in the Fund as a result of work performed by claimant John Moscow while at that firm, underscores the wisdom of including the attorneys' firms as potential claimants.

**The Tasks Undertaken, and the Time Spent, by PEG Was Reasonable**

15.     Ajamie's objections to specific portions of PEG's fee application are equally meritless. Although he does not contend that the total number of hours expended on the preparation of PEG's pleading is unreasonable, Ajamie argues that "there was no need for a fourteen-page complaint in this action" and he takes PEG to task for advising the Court of the background relating to this dispute. Ajamie. Mem. in Opp. at 8. It is unusual, to say the least, that a defendant objects to a complaint containing too many factual averments. Is it really Ajamie's contention that PEG acted improperly by providing the Court with background relating to the interpleader, including Ajamie's efforts to prevent PEG from filing that proceeding in this Court?

16.     Ajamie next seeks to challenge the hours expended by a junior associate to research interpleader actions prior to the filing. Thus, Ajamie contends that no time should have been spent researching venue, as that issue is squarely addressed in 28 U.S.C. § 1397. Ajamie Decl. ¶ 35; Ajamie Mem. in Opp. at 9. As Ajamie is aware, however, PEG was considering interpleader both under 28 U.S.C. § 1397 (statutory interpleader) and under Federal Rule of Civil Procedure 22 (rule interpleader), as well as the availability of interpleader under state statutes and common law. Ms. Figueira's work included analysis of all of these options, in order to determine which one would best provide PEG with the relief it needed.

17. Ajamie was aware of PEG's thinking on this issue because I specifically discussed it with him and his Texas counsel in May 2007. As noted in the Complaint, on May 25, 2007, PEG wrote to counsel for both Ajamie and Weiss in the competing litigations in order to advise them of PEG's intent to file an interpleader action if the parties could not resolve the matter. Compl. ¶¶ 44-45 and Ex. I. After sending this letter, I had a telephone conversation with Ajamie's Texas counsel in which he sought to persuade me to have PEG deposit the Fund in Texas. I explained that I was unwilling to do so because the Texas action did not include all potential claimants to the Fund, and thus bore the risk to PEG of duplicative claims. I further advised him that PEG did not want to interplead the Fund in the litigation Weiss had filed in New York state court for the same reason. Instead, so that no one could accuse PEG of trying to advantage one potential claimant to the Fund over another, PEG stated its preference to initiate a federal interpleader action in New Jersey, where PEG resides. Unfortunately, our research did not uncover a basis on which PEG could do so and still join all potential claimants. Accordingly, PEG ultimately determined to proceed by statutory interpleader in this district, where it knew at least one claimant resided.[6] 28 U.S.C. § 1397.

18. Finally, Ajamie contends that PEG should not be able to claim certain time spent by its Texas counsel in connection with defending the litigation Ajamie brought to prevent PEG from initiating this action. As discussed in the accompanying Reply Declaration of Christina Ponig, the challenged time was both reasonable and appropriate.

---

[6] As to the $476.00 for follow-up research on jurisdictional requirements incurred on May 30, 2007 (challenged in Ajamie Mem. in Opp. at 9), that research was performed to determine whether PEG could initiate the present action without depositing the entirety of the Fund in the Court registry. When it was determined that such deposit was a jurisdictional prerequisite for statutory interpleader, that conclusion only emphasized the need for PEG to proceed by Order to Show Cause in order to avoid potentially inconsistent orders in other courts.

## Conclusion

19.     For all of the foregoing reasons and those set forth in PEG's initial application, PEG respectfully requests that this Court render an award to it of attorneys' fees, disbursements and costs in the aggregate amount of $69,439.74.

Dated: New York, New York
      July 25, 2007

*/s/ David A. Picon*
DAVID A. PICON