UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

PRUDENTIAL EQUITY GROUP, LLC

                                      Plaintiff,

-against-

THOMAS R. AJAMIE, AJAMIE LLP, ROBERT
WEISS, ROBERT H. WEISS & ASSOCIATES, LLP,
JOHN MOSCOW, BRIAN ROSNER,
ROSNER NAPIERALA LLP, DAVID
ROBBINS, KAUFMANN FEINER YAMIN GILDIN &
ROBBINS, LLP, WALLACE SHOWMAN,
BERNSTEIN LITOWITZ BERGER &
GROSSMAN LLP, ROBERT KRAUS, KRAUS &
ZUCHLEWSKI LLP, MARTIN KROLL, KROLL, MOSS &
KROLL LLP, JOHN DOES 1-25 AND
ABC CORPORATIONS 1-25,

                                   Defendants.
------------------------------------------------------------------X

AMENDED ANSWER TO
COMPLAINT FOR
INTERPLEADER AND
CROSS-CLAIMS BY
ROBERT WEISS AND
ROBERT WEISS &
ASSOCIATES

07 CV 5606 (JSR)

## ADMISSIONS AND DENIALS

Defendant Robert Weiss and Robert H. Weiss & Associates, LLP, (collectively "Weiss"), by their attorney, hereby allege as their Answer to the Plaintiff's complaint as follows:

1. Admits ¶ 1.

2. Denies knowledge or information sufficient to form a belief as to ¶ 2.

3. Denies knowledge or information sufficient to form a belief as to ¶ 3, but admits Ajamie has made claims to the Disputed Fund.

4. Admits ¶ 4.

5. Admits ¶ 5.

6. Admits ¶ 6.

7. Denies knowledge or information sufficient to form a belief as to ¶ 7 but admits Ajamie has identified defendant John W. Moscow as having a potential claim to the Disputed Fund.

8. Denies knowledge or information sufficient to form a belief as to ¶ 8.

9. Denies knowledge or information sufficient to form a belief as to ¶ 9.

10. Denies knowledge or information sufficient to form a belief as to ¶ 10.

11. Denies knowledge or information sufficient to form a belief as to ¶ 11.

12. Denies knowledge or information sufficient to form a belief as to ¶ 12.

13. Denies knowledge or information sufficient to form a belief as to ¶ 13.

14. Denies knowledge or information sufficient to form a belief as to ¶ 14, but admits Ajamie has identified Kraus as having a potential claim to the Disputed Fund.

15. Denies knowledge or information sufficient to form a belief as to ¶ 15.

16. Admits ¶ 16, but denies defendant Martin Kroll has an enforceable claim.

17. Admits ¶ 17, but denies defendant Kroll, Moss & Kroll LLP has an enforceable claim.

18. Denies knowledge or information sufficient to form a belief as to ¶ 18.

19. Admits ¶ 19.

20. Admits ¶ 20.

21. Admits ¶ 21.

22. Admits ¶ 22.

23. Admits ¶ 23, but denies knowledge or information sufficient to form a belief that Ajamie and Kraus were "counsel of record."

24. Admits ¶ 24.

25. Admits ¶ 25.

26. Admits ¶ 26.

27. Denies the allegation in ¶ 27 that Weiss refused to give proper assurances or failed to cooperate with respect to distribution of settlement monies.

28. Denies the allegation in ¶ 28 that Weiss contributed to delay in payment but admits Ajamie caused delay.

29. Admits ¶ 29.

30. Denies knowledge or information sufficient to form a belief as to ¶ 30.

31. Admits ¶ 31.

32. Admits ¶ 32.

33. Admits ¶ 33.

34. Admits ¶ 34.

35. Admits ¶ 35, but denies any suggestion that Weiss has not attempted to provide a "joint instruction."

36. Admits ¶ 36.

37. Admits ¶ 37.

38. Admits ¶ 38.

39. Admits ¶ 39.

40. Admits ¶ 40, but Weiss alleges in the complaint, in the alternative, that the agreement between Ajamie and Weiss should be enforced.

41. Admits ¶ 41.

42. Denies ¶ 42. The Court in Harris County, Texas has dismissed Ajamie's action against Weiss. Ajamie is currently in the process of appealing that dismissal.

43. Denies knowledge or information sufficient to form a belief as to ¶ 43.

44. Admits ¶ 44, but Weiss asked plaintiff for an extension of time to reach an agreement with all interested parties and not deposit the funds in Court.

45. Admits ¶ 45, but see ¶ 44, *supra*.

46. Admits ¶ 46.

47. Denies knowledge or information sufficient to form a belief as to ¶ 47.

48. Admits ¶ 48.

49. Admits ¶ 49.

50. Admits ¶ 50.

51. Admits ¶ 51.

52. Denies knowledge or information sufficient to form a belief as to ¶ 52.

53. Denies knowledge or information sufficient to form a belief as to ¶ 53.

## CROSS-CLAIMS AGAINST CO-DEFENDANTS AND CLAIM FOR INTERPLEADED FUNDS

### FACTS

54. In or about February 2000, Charanjit Sahni, Harpreet Sahni, Nasimang Enterprises, AVV/Nasimang Trust by Nand Sahni and Charanjit Sahni; Charanjit Sahni Custodian Angad Sahni Utma; and Charanjit Sahni Custodian Simran Sahni Utma (collectively "Sahni Clients") tendered $23 million to Prudential Equity Group, LLC ("Prudential") to provide brokerage services. Within a few months the Sahni Clients sustained losses of $21 million. The Sahni Clients believed the losses were a result of negligence, breach of fiduciary duty, unsuitable trading, lack of supervision and other violations of the securities laws.

55. In or about April 16, 2002, the Sahni Clients consented to submitting their claims to binding arbitration. Prudential entered into a similar agreement in or about June 2002.

56. Upon information and belief, in or about August 2001, the Sahni Clients consulted Kroll, Moss & Kroll, LLP, ("Kroll Firm") regarding the aforementioned losses. The Sahni Clients retained the Kroll Firm.

57. The Kroll Firm performed very little work on the Sahni Client matter and in March 2002, the firm received an offer of approximately $225,000 for a $22 million claim. Martin Kroll suggested they accept the settlement offer.

58. The Sahni Clients were extremely unhappy with their representation by the Kroll Firm and, shortly thereafter, the Sahni Clients notified the firm they were terminating their services.

59. On or about April 1, 2002, the Sahni Clients retained Robert H. Weiss & Associates, P.C., through Robert H. Weiss, Esq., (jointly referred to as "Weiss") to prosecute their claim against Prudential. The Sahni Clients agreed in a written retainer to pay Weiss 30% of any recovery as a legal fee. Weiss agreed to pay any legal fee owed to the Kroll firm out of his 30% share. However, neither the Sahni Clients nor Mr. Weiss believed that Kroll was entitled to any legal fee based upon his failure to properly and timely prosecute the Sahni Clients' claim.

60. Weiss immediately began to proceed with drafting a complaint and within three weeks a NASD complaint was filed on behalf of the Sahni Clients.

61. In or about the fall of 2001, Mr. Weiss fortuitously met defendant Thomas Ajamie, Esq. for the first time at a PIABA (Public Investors Arbitration Bar Association Meeting) meeting in Florida. The two men became reacquainted at the next annual PIABA meeting in Colorado during the fall of 2002. At the Colorado meeting, Mr. Weiss mentioned the Sahni case and informally inquired if Defendant Ajamie might be interested in acting as co-

counsel with Mr. Weiss. This was only a preliminary discussion and no agreement was reached regarding Defendant Ajamie joining Mr. Weiss as co-counsel.

62. Mr. Weiss and Defendant Ajamie spoke on the telephone a number of times. In October 2002, Defendant Ajamie came to New York and he orally agreed with Mr. Weiss upon a co-counsel arrangement in which they agreed that they would each receive 50% of any legal fee recovered and each party would be equally responsible for the costs of the law suit. Defendant Ajamie never mentioned that he would retain additional trial counsel, outside his firm, to assist in the case or Arbitration.

63. Sometime shortly thereafter, Mr. Weiss spoke to the Sahni Clients and asked permission to allow defendants to act as co-counsel. Mr. Weiss explained to the Sahni Clients that he would continue to work on the case as co-counsel and he would remain responsible, with defendants, for their case. The Sahni Clients authorized Mr. Weiss to bring in Defendant Ajamie as co-counsel. Defendant Ajamie never applied to be admitted *pro hac vice* in New York even though he would be providing legal services in New York. Upon information and belief, Defendant Ajamie never entered into a written retainer with the Sahni Clients.

64. Defendant Ajamie drafted a letter to serve as a fee-sharing agreement ("Fee Agreement") memorializing the parties' previous discussions and he forwarded it to Mr. Weiss. The parties' letter agreement was executed in October 2002. Defendant Ajamie stated in the letter Fee Agreement that:

> This letter sets forth our agreement to **work together** on behalf of the Sahni Clients. We will **jointly represent** the Sahni Clients in connection with their securities claims . . .
>
> **We will work with you** on behalf of the Sahni Clients in preparing and presenting their claims . . .

> You have consulted the Sahni Clients and you represent to us that they are aware of our participation in the matter and consented to it. (emphasis added.)

65. Weiss continued to work on the Sahni Clients' case with defendants. In or about February 2004, defendant Ajamie drafted an amendment to the parties' original Fee Agreement. This amended agreement changed the proportion of the percentages that each party would receive of the fees derived from the settlement. Plaintiff's percentage was reduced to 34% and defendant's percentage was increased to 66%. The parties executed the agreement on or about February 16, 2004 in Florida ("Amended Fee Agreement").

66. Weiss agreed in the Amended Fee Agreement to pay from his share of the legal fee, any fees owed to law firms who had a claim for fees for a prior representation of the Sahni Clients. This provision was in response to the parties' conversation about any claim the Kroll firm may assert. There was no discussion that any other claims by other attorneys retained in the future would be covered by this provision and defendant never mentioned his intention of retaining other counsel to assist him. To the contrary, Defendant Ajamie gave the clear impression that he, with the help of Mr. Weiss, would handle the Sahni Clients' Arbitration. This was the precise reason that Mr. Weiss agreed to the amendment to the original fee agreement.

67. At some point in late 2003 or early 2004, defendant began to cut off information going to Mr. Weiss and stopped returning Mr. Weiss's telephone calls. Notwithstanding defendant's obstreperous attitude towards Mr. Weiss, Mr. Weiss continued to participate in the Sahni Clients' representation. He attended numerous Arbitration sessions as co-counsel.

68. At some time after the Arbitration started, Mr. Weiss believed he was being completely shut out of the Sahni Client case and defendants were attempting to interfere with his

attorney-client relationship with the Sahni Clients. Many phone calls went unreturned. Defendant Ajamie as "lead counsel" precluded Mr. Weiss from contributing to the case. Mr. Weiss could not obtain the cooperation of Defendant Ajamie and Mr. Weiss stopped appearing at the Arbitration. Defendant Ajamie never requested or even suggested that Mr. Weiss continue attending the Arbitration. To the contrary, he gave every indication that he did not want Mr. Weiss present.

69. Mr. Weiss concluded that Defendant Ajamie was cutting Mr. Weiss out of the Sahni Clients case. Consequently, Mr. Weiss served a charging lien on Prudential and Prudential's counsel regarding the Sahni Clients' case because he was afraid Defendant Ajamie was scheming to cut him out of the legal fee to which the parties had previously agreed.

70. At some point thereafter, defendant retained the services of John Moscow, Esq., to participate in the Arbitration, who was affiliated at the time with Rosner, Moscow & Napierala, LLP, and who was not a member of Ajamie's firm, to act as additional co-counsel. Defendant Ajamie did not seek permission from Weiss or the Sahni Clients to utilize Mr. Moscow's services.

71. On or about May 18, 2006, an Arbitration Panel awarded the Sahni Clients $11.8 million, plus interest.

72. After the Arbitration Panel rendered their award, Defendant Ajamie, without consulting Mr. Weiss, or receiving permission from the Sahni Clients, retained Robert Kraus, who is not a member or employee of Defendant Ajamie's firm, to submit a motion to confirm the award. Defendant Ajamie was not, and is not, admitted to practice law in New York and could not file the motion. Nonetheless, upon information and belief, Defendant Ajamie participated in the appeal.

73. The Arbitration award was confirmed and the Sahni Clients have received their share of the settlement monies, minus the legal fees. The remainder of the settlement, the legal fees for the Sahni case, is the subject of this interpleader action.

74. Defendants explicitly repudiated the parties' Amended Fee Agreement when defendants sued Weiss in Texas seeking to deny Mr. Weiss any legal fee and to repudiate the validity of their agreement. The Texas Court has dismissed the action against Mr. Weiss.

75. Mr. Weiss never learned that Ajamie had retained the co-defendants to purportedly perform legal work on the Sahni matter. Mr. Weiss was never asked or consulted regarding the retention of any of the co-defendants.

### FIRST CROSS-CLAIM

(Breach of Contract – Defendant Ajamie)

76. Weiss repeats and re-alleges every allegation contained in paragraphs 1 through 75 as is fully set forth herein.

77. Defendant Ajamie has denied Weiss his portion of the legal fees from the Sahni settlement by repudiating their Amended Fee Agreement.

78. Defendant Ajamie has breached their Amended Fee Agreement and Weiss has been damaged thereby in an amount equal to 34% of the legal fees from the Sahni settlement plus interest.

### SECOND CROSS-CLAIM

(Denial of Fees for the Unauthorized Practice of Law – Defendant Ajamie)

79. Weiss repeats and re-alleges every allegation contained in paragraphs 1 through 78 as is fully set forth herein.

80. Defendant Ajamie is an attorney admitted in Texas but not admitted in New York.

81. For all times pertinent to this proceeding, Defendant Ajamie never applied for, nor was granted, *pro hac vice* status in New York.

82. Defendant Ajamie engaged in the unauthorized practice of law in New York by conducting the Sahni Clients' Arbitration in New York before the NASD and, *inter alia:* meeting with the Sahni claimants in New York; interviewing witnesses in New York; preparing witnesses to testify in New York; preparing for the Arbitration in New York; communicating with New York counsel for Prudential, by corresponding, faxing, e-mailing and telephoning Prudential's New York counsel regarding the New York Arbitration. During the entire appellate process, Defendant Ajamie continued to advise Mr. Sahni on New York Law without seeking *pro hac vice* status.

83. By this conduct Defendant Ajamie violated Judiciary Law §§ 478 & 484 and he should be denied any and all legal fees for his work in the Sahni matter because all work is attributable to prosecuting a New York Arbitration; or, in the alternative, denying defendants any fee attributable to work in New York.

### THIRD CROSS-CLAIM

(Tortious Interference with the Attorney-Client Relationship
and the Violation of Good Faith and Fair Dealing – Defendant Ajamie)

84. Weiss repeats and re-alleges every allegation contained in paragraphs 1 through 83 as is fully set forth herein.

85. Defendant Ajamie refused to allow Mr. Weiss to participate in the representation of the Sahni Clients after the completion of a few Arbitration sessions. This obstreperous

conduct was an attempt to interfere with the attorney-client relationship between Mr. Weiss and the Sahni Clients.

86. Ajamie's conduct was part of his scheme to cut Mr. Weiss out of any portion of the legal fee to which Mr. Weiss was entitled, pursuant to the parties' Amended Fee Agreement.

87. This scheme culminated in Defendant Ajamie bringing a law suit in Texas regarding the parties' fee dispute simply to harass Mr. Weiss when there was absolutely no basis whatsoever to commence an action in that jurisdiction.

88. Ajamie's conduct constitutes a scheme that violated defendant's duty of good faith and fair dealing under the parties' Amended Fee Agreement.

89. Due to this misconduct, Defendant Ajamie violated the parties' Amended Fee Agreement in bad faith and Ajamie should be denied any portion of the fee monies from the Sahni settlement and Weiss should be granted all of the monies being held as legal fees in the Sahni matter.

## FOURTH CROSS-CLAIM

(No Retainer Agreement with Client – All Co-Defendants)

90. Weiss repeats and re-alleges every allegation contained in paragraphs 1 through 89 as is fully set forth herein.

91. Upon information and belief, Weiss and Kroll are the only defendants that executed a written retainer with the Sahni Clients. However, Kroll's retainer was superseded by Weiss's subsequent retainer agreement and Kroll is now relegated to a charging lien to the extent he can prove he should receive a fee for work purportedly performed before his termination. Therefore, Weiss's retainer is the only enforceable retainer at this time.

92. For a lawyer to receive a contingency fee in New York the lawyer must have a written retainer agreement with a client.

93. Weiss is the only co-defendant that executed an enforceable retainer with the Sahni Clients. Therefore, only Weiss may enforce the Sahni Clients' contingency fee agreement.

## AFFIRMATIVE DEFENSES

(Co-Defendants' Only Claim is Against Ajamie – All Defendants)

94. Weiss repeats and re-alleges every allegation contained in paragraphs 1 through 93 as is fully set forth herein.

95. Defendants Brian Rosner, Rosner Napierala LLP, John Moscow and Wallace Showman purportedly entered into an agreement with co-defendant Ajamie to provide legal services for the Sahni Clients.

96. Former co-defendants Robert Kraus, Esq., Kraus & Zuchlewski LL, David Robbins, Esq., and Kaufmann Feiner Yamin Gildin & Robbins, LLP ("former co-defendants"), also purportedly entered into an agreement with co-defendant Ajamie to provide legal services for the Sahni Clients.

97. These agreements were not authorized or discussed with co-counsel, Weiss, who was the only attorney with a retainer with the Sahni Clients.

98. Upon information and belief, no written permission was obtained from the Sahni Clients for dividing the legal fees with an attorney not affiliated with Weiss.

99. Defendant Ajamie's agreements with the co-defendants and former co-defendants violated defendant Ajamie's Amended Fee Agreement with Weiss and Weiss's retainer with the Sahni Clients.

100. Any rights or interests that co-defendants and former co-defendants (except Kroll) claim to legal fees for services rendered in the Sahni litigation must be paid directly by defendant Ajamie, who is solely responsible for the legal fees to which he agreed.

101. Therefore, all claims by Wallace Showman, Esq., Brian Rosner, Esq., Rosner & Napierala LLP, John Moscow, Esq. and the former co-defendants, may not be enforced directly against the funds deposited in Court by plaintiffs.

## **REQUEST FOR RELIEF**

Weiss demands a judgment:

  i. Denying co-defendant Ajamie any legal fee and granting Weiss the right to receive the entire legal fee owed under the Sahni Clients' retainer agreement due to Ajamie's misconduct;

  ii. Enforcing the Ajamie's Amended Fee Agreement with Weiss and thereby, granting Weiss 34% of all legal fees owed and reimbursement for all litigation expenses;

  iii. Taxing Ajamie for any and all fees, expenses and disbursements granted plaintiff's counsel;

  iv. Denying all co-defendants and former co-defendant (except Kroll) any legal fee and granting Weiss the right to receive the entire Sahni legal fee because no co-defendant, other than Weiss, has a written, enforceable retainer agreement with the Sahni Clients;

  v. Directing defendant Ajamie to pay any legal fees this Court determines is owed to co-defendants and former co-defendants who had an agreement with defendant Ajamie;

  vi. Granting any further or different relief deemed fair, just and equitable including interest, costs, and disbursements of this action and reasonable attorney fees.

## JURY TRIAL

Defendant Weiss demands a jury trial on all cross-claims.

Dated: New York, NY
      August 16, 2007

/s/ Richard M. Maltz (RM 5627)

RICHARD M. MALTZ, PLLC
488 MADISON AVENUE, 10th Fl.
NEW YORK, NY 10022
(212) 705-4804
(347) 438-2087 (fax)

ATTORNEY FOR ROBERT WEISS AND
ROBERT H. WEISS & ASSOCIATES,
LLP

TO:    Proskauer Rose LLP
       Plaintiff Prudential Equity Group
       1585 Broadway
       New York, NY 10036-8299

       Eric Grannis, Esq.
       Defendants Thomas R. Ajamie, Esq., Ajamie LLP, Wallace Showman, Esq.
       620 Fifth Avenue
       New York, NY 10020

       John Moss, Esq.
       Defendant Martin Kroll, Esq.,
       Kroll, Moss & Kroll, LLP
       400 Garden City Plaza – Suite 310
       Garden City, NY 11530-3322

       Michael Malloy, Esq.
       Defendant Brian Rosner, Esq.
       Finestein & Malloy LLC
       26 Main Street
       Chatham, NJ 07928

       Robert L. Herbst, Esq.
       Defendant John Moscow, Esq.
       Beldock Levine & Hoffman, LLP
       99 Park Avenue – Suite 1600
       New York, NY 10016