UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

PRUDENTIAL EQUITY GROUP, LLC

                        Plaintiff,

          -against-
                                               STATEMENT OF
                                               MATERIAL FACTS
                                               PURSUANT TO LOCAL
                                               RULE 56.1

THOMAS R. AJAMIE, AJAMIE LLP, ROBERT H.
WEISS, et al.                                        07 CV 5606 (JSR)

                        Defendants.
------------------------------------------------------------X

       Cross-claimants, Robert H. Weiss and Robert Weiss, LLP, in support of their motion for summary judgment or partial summary judgment submits this Statement of Material Facts, pursuant to Local Rule 56.1, as to which they contend there is no genuine issue to be tried.

**<u>Robert Weiss Is Retained</u>**

       1.      In or about February 2000, Charanjit Sahni, Harpreet Sahni, Nasimang Enterprises, AVV/Nasimang Trust by Nand Sahni and Charanjit Sahni; Charanjit Sahni Custodian Angad Sahni Utma; and Charanjit Sahni Custodian Simran Sahni Utma (collectively "Sahni Clients") tendered approximately $22 million to Prudential Equity Group, LLC ("Prudential") to provide brokerage services. Within a few months the Sahni Clients sustained losses of approximately $22 million. The Sahni Clients, New York residents, residing in New York, believed the losses were a result of negligence, breach of fiduciary duty, unsuitable

trading, lack of supervision and other violations of the securities laws by a New York branch of the plaintiff. (A. Answer ¶ 1; A. Admit, No. 1; Exhibit F)[1]

2. In or about April 16, 2002, the Sahni Clients consented to submitting their claims to binding arbitration. Plaintiff entered into a similar agreement in or about June 2002. (A. Answer ¶ 2)

3. In or about August 2001, the Sahni Clients consulted co-defendant Kroll, Moss & Kroll, LLP, ("Kroll Firm") regarding the aforementioned losses. The Sahni Clients retained the Kroll Firm. (Exhibit B; A. Dep. 6)[2]

4. Shortly thereafter, the Sahni Clients terminated the Kroll Firm's representation. (Exhibit C)

5. On or about April 1, 2002, the Sahni Clients retained Weiss's law firm, Robert H. Weiss & Associates, P.C., through Robert H. Weiss, Esq., (jointly referred to as "Weiss") to prosecute their claim against Plaintiff. The Sahni Clients agreed in a written retainer to pay Weiss 30% of any recovery as a legal fee. Weiss agreed to pay any legal fee owed to the Kroll firm out of his 30% share. (A. Answer ¶ 6; A. Admit No. 2; Exhibit D; A. Dep. 41)

6. Weiss and his firm began to work on the matter. Weiss obtained documents that were eventually turned over to Ajamie. (A. Dep. 53, 56, 67, 74-5; Exhibit E) Weiss's office also conducted legal research on the pertinent issues. He also consulted securities experts, some of whom were used at the arbitration. (A. Dep. 56-7, 69-74; Exhibit E) He also contacted Plaintiff's counsel. (A. Dep. 55) Weiss's office drafted a Statement of Claim and filed it with

---

[1] References to Thomas Ajamie's Answer to Weiss's cross-complaint will be noted as "A. Answer" and references to Ajamie's answers to Weiss's Notice to Admit will be noted as "A. Admit")

[2] References to Thomas Ajamie's deposition will be noted as "A. Dep."

New York Stock Exchange ("NYSE") on behalf of the Sahni Clients in or about April 2002. ("Sahni Arbitration" or "Arbitration")(Exhibit F; A. Dep. 64)   Weiss and associates at his firm began to seek more information to further the Sahni Clients' claim and the firm received documents regarding the case. (A. Dep. 56; M. Dep. 12)[3]

7.   Originally, Kroll refused to turn over the documents he obtained and Weiss consulted an attorney to bring suit, but eventually Weiss negotiated the transfer of the documents. (Exhibit C)

**Ajamie Agrees to Act as Co-Counsel**

8.   Ajamie and Weiss became acquainted at a PIABA (Public Investors Arbitration Bar Association Meeting) meeting in Florida. (A. Answer ¶ 8; A. Dep. 29-30)

9.   Ajamie was admitted only in Texas and Ajamie's office was located in Texas (A. Dep. 6). He was a lawyer with extensive securities arbitration experience; 95% of his practice was comprised of securities cases. He handled cases in a number of states across the country. (A. Dep. 10, 11, 13, 16)

10.   Sometime after their first meeting, Weiss mentioned the Sahni Arbitration to Ajamie and informally inquired if Ajamie would be interested in acting as co-counsel with him. (A. Dep. 34; A. Admit No. 6)  Ajamie did not know any of the Sahni clients before Weiss commenced the Sahni Arbitration. (A. Admit No. 5)

11.   Ajamie and Weiss spoke on the telephone a number of times. (A. Dep. 35; A. Answer ¶ 9)  In or about October 2002, Ajamie orally agreed to become co-counsel in the Sahni Arbitration and they agreed that each would each receive 50% of any legal fee recovered and each party would be equally responsible for the law suit. (A. Dep. 35; A. Admit No. 8)

---

[3] References to John Moscow's deposition will be noted at "M. Dep.")

Ajamie did not mention at that time that he would retain additional trial counsel, outside his firm, to assist in the Sahni Arbitration. (A. Answer 9)

12. Sometime shortly thereafter, Weiss spoke to the Sahni Clients and asked permission to have Ajamie act as co-counsel. Weiss explained to the Sahni Clients that he would continue to work on the case as co-counsel and he would remain responsible for their case. The Sahni Clients authorized Ajamie to work as co-counsel. (A. Dep. 43-4; A. Answer ¶ 10)

13. Ajamie never entered into a written retainer with the Sahni Clients. (A. Dep. 49; A. Admit No. 9, 13; A. Answer ¶ 10)

14. Ajamie drafted a letter to serve as a fee-sharing agreement ("First Fee Agreement") memorializing his previous discussions with Weiss. (A. Dep. 42-3; Exhibit G) He forwarded it to Weiss. This First Fee Agreement was executed in October 2002.

15. The First Fee Agreement stated, in part, that:

> This letter sets forth our agreement to work together on behalf of the Sahni Clients. We will jointly represent the Sahni Clients in connection with their securities claims . .
>
> We will work with you on behalf of the Sahni Clients in preparing and presenting their claims . . .
>
> You have consulted the Sahni Clients and you represent to us that they are aware of our participation in the matter and consented to it.

(Exhibit G; A. Dep. 64; A. Answer ¶ 11)

16. Weiss's firm initially worked on the Sahni Clients' case with Ajamie and his office participated in some witness meetings and meetings with the Sahni Clients. (A. Dep. 75-77) Weiss consulted with Ajamie on strategy, including expert witnesses (A. Dep. 69-74, 79) Weiss's associates worked on the case and communicated with Ajamie. (A. Dep. 83; Exhibit H)

- 4 -

17. Ajamie sent Weiss copies of letters between Ajamie and Plaintiff's counsel up until a point. (A. Dep. 79; Exhibit I)

18. In September 2003, Weiss wrote a letter to Ajamie complaining about Ajamie's failure to return Weiss's telephone calls. (Exhibit J; A. Dep. 149-150)

19. The Sahni Clients' Arbitration hearing against Plaintiff commenced in September 2003 in New York. (A. Dep. 102) Weiss attended fourteen hearing sessions. (Exhibit K)

20. In or about February 2004, Ajamie and Weiss amended the First Fee Sharing Agreement. (A. Admit No. 11; A. Answer ¶ 12; A. Dep. 108)

21. This amended agreement changed the proportion of the percentages of the fees that each party would from any settlement or award. Weiss's percentage was reduced to 34% (from 50%) and Ajamie's percentage was increased to 66%. The parties executed the agreement on or about February 16, 2004 in Florida ("Amended Fee Agreement") (*See*, Exhibit L; A. Dep. 108-119)

22. The Amended Fee Agreement stated, in part, that:

> Mr. Ajamie agrees to handle the case and continue to try it before the NYSE panel.

23. The Amended Fee Agreement also stated that:

> Mr. Weiss also agrees to pay from his 34% all amounts due to other lawyers for law firms who make a claim or lien against this case.

24. In February 2004, shortly after the Amended Fee Agreement was executed, Weiss confirmed with the Sahni Clients, in writing, the new arrangement with Ajamie. (Exhibit M)

25. In early 2004, during the course of the arbitration proceeding, Ajamie decided to move to recuse one of the arbitrators and he retained the services of New York attorney Wallace

Showman, Esq. ("Showman"). Showman was not formally affiliated with Ajamie's law firm. (A. Dep. 95-6) Showman is currently a co-defendant herein.

26. A motion was filed in New York State Supreme Court and was governed by New York law. (Exhibit N; A. Dep. 167-9)

27. Ajamie made the decision to move to recuse the arbitrator and he drafted an affidavit in support of the motion. (A. Dep. 167-9)

28. It was filed in New York State Supreme Court by Showman. New York State Justice Kibbie F. Payne denied the application. (See, Exhibit N)

29. In or about April 2005, a little over a year after the Amended Fee Agreement was executed, Ajamie retained the services of John Moscow, Esq., ("Moscow") to participate in the Sahni Arbitration, who was affiliated, at the time, with Rosner, Moscow & Napierala, LLP. (A. Dep. 152; M. Dep. 5) Moscow attended his first arbitration hearing on or about May 5, 2005 and he attended approximately nine sessions. (A. Dep. 152-153)

30. Ajamie entered into a fee sharing agreement with Moscow's firm that entitled Moscow and/or his (former) firm to a substantial fee. (Exhibit O) Neither Moscow nor his firm was affiliated with Ajamie's firm. Both Moscow and his former firm are co-defendants herein.

31. Ajamie did not inform Weiss of his intention to enter into his agreement with Moscow when he decided to bring Moscow into the case in 2005. (A. Dep. 156)

32. He did not seek permission from Weiss to retain Moscow at the time Ajamie entered into the agreement with Moscow. (A. Dep. 156)

33. Although the Sahni Clients knew Moscow was working with Ajamie, Ajamie did not provide any writing to the Sahni Clients that he had brought in Moscow as counsel for the Sahni Clients' case and Moscow would be sharing in the fee. (A. Dep. 164, 166)

34. Moscow had no written retainer with the Sahni Clients. (A. Admit No. 29; M. Dep. 13)

35. Kraus had no written retainer with the Sahni Clients. (A. Admit No. 30.

36. Showman had no written retainer with the Sahni Clients. (A. Admit No. 31)

37. Ajamie conducted the Sahni Client's arbitration in New York. (A. Ajamie 39)

38. Ajamie prepared witnesses in New York State for the Sahni Arbitration. (A. Admit No. 35) He met with the Sahni Clients in New York between 60-90 times. (A. Dep.75-76) He met many fact witnesses and some expert witnesses in New York. (A. Dep. 78)

39. Ajamie received documents in New York State for the Arbitration. (A. Admit No. 36)

40. Ajamie provided legal advice to Sahni in New York State. (A. Admit No. 37)

41. Ajamie never applied to be admitted *pro hac vice* in New York during the Sahni Arbitration hearing process. (A. Admit No. 40)

42. On or about May 18, 2006, an Arbitration Panel awarded the Sahni Clients $11.8 million, plus interest. (Exhibit P)

43. Weiss never moved to withdraw from representing the Sahni Clients at any time. (A. Dep. 180; M. Dep. 16)

44. The Sahni Clients never terminated Weiss's representation. (A. Admit No. 18)

45.  The Arbitration award was confirmed.  (*See*, Exhibit Q)

Dated: New York, NY
       January 3, 2008

By: /s/ Richard M. Maltz

Richard M. Maltz (RM 5627)

RICHARD M. MALTZ, PLLC
488 Madison Avenue, 10th Floor
New York, NY  10022
212-705-4808
347-438-2097 (fax)

Attorney for Robert Weiss and Robert H. Weiss & Associates, LLP