249.01

| | |
|---|---|
| **From:** | "gregg" <gregg@mail.robertweisslaw.com> |
| **To:** | <tajamie@salawfirm.com> |
| **Date:** | 11/15/2002 3:32:56 PM |
| **Subject:** | sahni list |

Tom,
The sahni list is on the way as per Kreuter of the NYSE. We are using "enhanced selction".

Gregg R. Evangelist, Esq.
Tel: 516-876-4213
Gregg@robertweisslaw.com

Robert H. Weiss & Assoc., P.C.
50 Jericho Tpke., Suite 201
Jericho, New York 11753

THIS E-MAIL CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR USE OF THE RECIPIENT(S) NAMED ABOVE. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR AND/OR YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IN SUCH AN EVENT, PLEASE IMMEDIATELY REPLY TO THE SENDER THAT YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, DELETE THIS MESSAGE, AND DESTROY ANY WRITTEN COPIES OF SAME. THANK YOU.



249.01

| | |
|---|---|
| **From:** | "gregg" <gregg@mail.robertweisslaw.com> |
| **To:** | <tajamie@salawfirm.com> |
| **Date:** | 12/2/2002 1:50:38 PM |
| **Subject:** | Sahni arbitration |

Tom,
Sonny Sahni will be coming to the office tomorrow (Tuesday). Sonny wants an update on the status of his case. Robert will be out of town, so only I will be meeting with Sonny.

If you are available, I would like to patch you into a brief phone call so that Sonny can speak with you. If you are not available, I will update you and Robert after the meeting about any issues discussed during the meeting. Let me know your availability (and if you have any areas you want me to address with Sonny in the event you are unable to participate).

Gregg R. Evangelist, Esq.
Tel: 516-876-4213
Gregg@robertweisslaw.com

Robert H. Weiss & Assoc., P.C.
50 Jericho Tpke., Suite 201
Jericho, New York 11753

THIS E-MAIL CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR USE OF THE RECIPIENT(S) NAMED ABOVE. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR AND/OR YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IN SUCH AN EVENT, PLEASE IMMEDIATELY REPLY TO THE SENDER THAT YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, DELETE THIS MESSAGE, AND DESTROY ANY WRITTEN COPIES OF SAME. THANK YOU.

**CC:**          <robert@robertweisslaw.com>

A-14

**MEMORANDUM**

To:  Robert H. Weiss, Esq.
     Thomas Ajamie, Esq.
From: Gregg R. Evangelist, Esq.
Date: 12-5-02
Re:   Sahni v. Prudential

---

1. <u>Reliance and trust – unsuitable, high risk trading / failure to follow instructions</u>
   The basic claim of Mr. Sahni is that the broker, Mitesh Shere, failed to follow the Claimant's instructions (namely to conservatively invest and manage his account) and engaged in unsuitable and inappropriate high risk trading; and that Prudential aided and abetted the misconduct (and failed to reasonably supervise).

   The key to successfully arguing this claim, is overcoming the Respondents' contention that Mr. Sahni is a sophisticated and experienced investor who was aware of (and directed) the activity in his account, and understood the risks.

   a. Fiduciary relationship – Claimant put total trust in broker (reliance).
      Shere had power of attorney—made all investment decisions (NOT Sonny as alleged in Answer);
      Ethnic ties (both broker and claimant are of Indian descent), and they developed a social relationship (considered him a friend) that began long before the account was opened at Prudential;

   b. Alleged sophistication of Sahni
      Sonny is smart man and with modest investment experience, but he clearly is not the sophisticated and active investor that the Respondents contend he is in their Answer;
      Sonny relied completely upon Shere's advice (and trusted him completely);
      Did not take time to carefully monitor his investments (traveled frequently due to biz, and felt at ease with trusted Shere watching his account).

   c. Investment objectives for Pru acct. / Prior trading at Ladenburg
      Respondents point to Sonny's prior investments with Shere at Ladenburg (aggressive/volatile/high risk trading) as direct evidence of his risk tolerance and investment objectives;
      However, the prior trading at Ladenburg is reflective of Shere's total control over Sonny's account while the account was at Ladenburg (which continued at Pru);
      At Ladenburg (as he continued to do at Pru), Shere abused his relationship and position of trust with Sonny, to run roughshod with his accounts, knowing that Sonny would not question or dispute his actions, but simply and blindly agree to his recommendations;
      The Ladenburg trading shows Sonny's reliance and blind trust in Shere and the fact that the trading turned out to be profitable while at Ladenburg does not make it appropriate or acceptable.

Confidential

1

The experience at Ladenburg (the extreme volatility in his accounts) was unsettling for Sonny, and just prior to the transfer to Pru (and thereafter) Sonny explicitly directed Shere to be conservative with his account to protect against losses.

2. Shere moves to Prudential with Sonny's account

We must introduce evidence (more discovery must be done on this point) showing that Shere negotiated a financial lucrative move to Prudential. Shere used Sonny's account, now worth $20 million (and the large fees, commissions, and margin charges such an account generated at Ladenburg) to sell himself as a profitable and big producer.

Although while at Ladenburg, Sonny's account was volatile (going wildly up and down), by the time of the transfer to Prudential Sonny's account was NOT heavily margined.

The move to Prudential was entirely Shere's idea (it was not prompted by Sonny as Respondents allege in the Answer);

One day "out of the blue" Shere began mentioning to Sonny that he was thinking of moving from Ladenburg to another firm (and he named Pru, ML and Goldman Sachs as possibilities);

Sonny believed a move to a larger and more respected firm would be good for him since he would have access to better research and more conservative investment options;

Shere had Sonny sign documents authorizing the transfer to Prudential (which Shere most likely used to his benefit in his negotiations with Pru);

We must introduce evidence showing that Shere used Sonny's "20m+ acct" to leverage a "deal" at Pru (sign on / forgiv loan), that Pru hired Shere based on his prior production which was predominantly due to Sonny's acct. Clearly, Sonny's acct needed to continue to be actively traded in order for Shere's deal to "pay off" and Prudential's "deal" for hiring Shere undoubtedly presumed that Shere's production would be equal to or greated than it was at Ladenburg and that the handling of Sahni's account would be the same as it was at Ladenburg;

A change of Sonny's account to more conservative investment (no margin, less trading, etc.) was not in Shere's interest (since he would be worth far less to Prudential with such an account), and it was not in Prudential's interest to reduce the trading, margin or level of risk in Sahni's account (or to carefully supervise Shere and the account) b/c to do so would dramatically reduce Shere's gross production numbers.

3. Sonny NOT aware of activity and losses at Prudential

Blind reliance and trust in Shere and Shere acted on power of attorney to make all trading decisions (he would buy or sell and then tell Sonny later);

Sonny would get brief updates from Shere over telephone (acct balance, etc.), but due to the volatile and complex nature of investments and use of margin, his accounts couldn't be easily monitored (the heavy use of margin meant that even intra-day the account was subject to tremendous volatility);

The investment losses occurred within a matter of DAYS (so he was unable to be aware and act before it was too late);

2

WEISS  0102

*December 4, 2002*

       Although Sonny spoke daily and often with Shere, much of time spent on telephone with Shere was social in nature (conversations went well beyond discussion about his account);

       Sonny did not see his confirmations and monthly account statements until long after they were mailed (because they were sent to Aruba) so he relied entirely upon Shere to update him on the status of the account, positions held, transactions, etc.;

4.   <u>Compliance and supervisory failures and apparent "cover-up" attempts by Prudential</u>

       Failure to follow procedures, protect the acct from loss, and detect Shere's misconduct;

       Mistakes on acct forms (eg. dates of pwr of atty, etc.) and on the supervisory reports/

## DOCUMENTS

1. Shere's Pru employment contract, forgiv loan, bonus, etc.
2. Golin's employment contract, loan, bonus, etc.
3. Shere's complaint history
4. Shere's termination information
5. Original order tickets
6. Shere's other client records (to show stocks were his recommendations not Sonnys)
7. Shere's personal investment and stock records
8. Pru's Policies and procedures
   - Acct opening
   - Use of margin
   - Risk management
   - Suitability
   - Supervision
   - Discretionary authority

3

WEISS 0103

249.01

ව ර

| | |
|---|---|
| **From:** | "gregg" <gregg@mail.robertweisslaw.com> |
| **To:** | "Tom Ajamie" <TAjamie@salawfirm.com> |
| **Date:** | 12/13/2002 10:57:33 AM |
| **Subject:** | Re: sahni arbitration |

I was unable to reach Robert Kreuter at the NYSE.  He did not answer and his phone voice mail was "full."

I am buried right now, if you could address this with Kreuter today I would appreciate it.  His number is 212-656-3728.

Gregg R. Evangelist, Esq.
Tel: 516-876-4213
Gregg@robertweisslaw.com

Robert H. Weiss & Assoc., P.C.
50 Jericho Tpke., Suite 201
Jericho, New York 11753

THIS E-MAIL CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR USE OF THE RECIPIENT(S) NAMED ABOVE. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR AND/OR YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IN SUCH AN EVENT, PLEASE IMMEDIATELY REPLY TO THE SENDER THAT YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, DELETE THIS MESSAGE, AND DESTROY ANY WRITTEN COPIES OF SAME.  THANK YOU.

---------- Original Message -------------------------------
From: "Tom Ajamie" <TAjamie@salawfirm.com>
Date:  Fri, 13 Dec 2002 10:52:26 -0600

>what about the arbitrator situation? do you want me to help?
>
>
>
>>>> "gregg" <gregg@mail.robertweisslaw.com> 12/13/2002 10:46:35 AM >>>
>OK.  I will get back to you on a date and time for the telephone conference.
>
>Gregg R. Evangelist, Esq.
>Tel: 516-876-4213
>Gregg@robertweisslaw.com
>
>Robert H. Weiss & Assoc., P.C.
>50 Jericho Tpke., Suite 201
>Jericho, New York 11753
>
>THIS E-MAIL CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR USE OF THE RECIPIENT(S) NAMED ABOVE. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR AND/OR YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IN SUCH AN EVENT, PLEASE IMMEDIATELY REPLY TO THE SENDER THAT YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, DELETE THIS MESSAGE, AND DESTROY ANY WRITTEN COPIES OF SAME.  THANK YOU.
>
>

A-16

From:    "robert " <robert@robertweisslaw.com> [robert@robertweisslaw.com]
Sent:    Wednesday, February 19, 2003 2:31 PM
To:    Tom Ajamie
Subject: Re: Sahni

Can we do it around noon on WEdnedsay?

Very Truly Yours,

Robert H. Weiss Esq.
Robert H. Weiss & Ass. P.C.
50 Jericho Tpke. Ste. 201
Jericho, N.Y. 11756
516.876.4213
Robert@Robertweisslaw.com



Original Message
From: "Tom Ajamie" <TAjamie@salawfirm.com>
Date: Wed, 19 Feb 2003 14:07:49 0600

>ok. I will be in NYC thru Tuesday, and can make it to Orlando Wed afternoon or Thursday am. What
do you think?
>
>
>
>
>>>> "robert " <robert@robertweisslaw.com> 2/19/2003 1:15:43 PM >>>
>No. I will be in ORlando with you on Wednesday.
>
>Very Truly Yours,
>
>Robert H. Weiss Esq.
>Robert H. Weiss & Ass. P.C.
>50 Jericho Tpke. Ste. 201
>Jericho, N.Y. 11756
>516.876.4213
>Robert@Robertweisslaw.com
>
>
>
> Original Message
>From: "Tom Ajamie" <TAjamie@salawfirm.com>
>Date: Tue, 18 Feb 2003 17:41:34 0600
>
>>Robert,

A-2

>>
>>Mr. Sahni has been calling frequently to get updates on the case. He called today. I told him that I'll be in New York beginning next Friday, 28 Feb. He asked me to dinner on Sunday, March 2. Can you join us? I'd like that. I'll be in the city March 3 and 4 too.

>>
>>Tom
>>
>>
>
>
>
>
>
>
>
>
>