UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

PRUDENTIAL EQUITY GROUP, LLC
                                    Plaintiff,

        -against-                                      07 CV 5606 (JSR)

THOMAS R. AJAMIE, AJAMIE LLP, ROBERT H.
WEISS, et al.

                                    Defendants.
-------------------------------------------------------------------X


ROBERT H. WEISS'S MEMORANDUM OF
LAW IN SUPPORT OF SUMMARY JUDGMENT


RICHARD M. MALTZ (RM5627)

RICHARD M. MALTZ, PLLC
488 MADISON AVENUE, 10th FL.
NEW YORK, NY 10022

212-705-4084
347-438-2087 (fax)

# TABLE OF CONTENTS

Page

TABLE OF CASES AND AUTHORITIES.........................................................ii

PRELIMINARY STATEMENT.....................................................................1

ARGUMENT.........................................................................................3

Point I.    In Order for a Lawyer to Receive a Legal Fee for Providing Legal
            Services in Furtherance of an Arbitration Located in New York the
            Lawyer Must Be Admitted to Practice Law in New York or Be
            Admitted *Pro Hac Vice* and, Therefore, Ajamie, as a Texas Admitted
            Lawyer, Is Not Entitled to any Fee Related to Work in New York .......3

Point II.   Weiss Was the Only Attorney With a Retainer Agreement With the
            Sahni Clients and He Was Jointly Responsible for the Clients' Case;
            Therefore, His Agreement With Ajamie to Share in the Sahni's Legal
            Fee Is Enforceable as a Matter of Law.........................................12

Point III.  Ajamie Breached his Fee Sharing Agreement With Weiss When He
            Retained Other Counsel Without Permission or Notice to Weiss and,
            Therefore, Ajamie Is Solely Responsible for Legal Fees for the
            Additional Counsel...............................................................20

CONCLUSION.....................................................................................23

i

## TABLE OF CASES AND AUTHORITIES

CASES                                                                    PAGES

*Aiello v. Uriel*, 193 Misc.2d 649 (Sup. Ct. N.Y. Cty. 2002) ....................11, 12, 16, 18

*Alderman v. Pan Am*, 169 F.3d 99 (2nd Cir. 1999)...............……………………………......11

*Benjamin v. Koeppel*, 85 N.Y.2d 549 (1995)…………………………………………...18, 19

*Birbrower, Montalbano, Condon & Frank v. Esq. Business*,
17 Cal. 4th 119, 949 P. 2d 1, 70 Cal. Rptr.2d 304 (1998)………………………………….5

*Carter v. Katz, Shandell, Katz & Erasmous*,
120 Misc.2d 1009 (Sup. Ct. N.Y. Cty. 1983)…………………………………………...12, 18

*Chimart Associates v. Paul*, 66 N.Y.2d 570 (1986)………………………………………...14, 15

*Cohen v. Bayger*, 269 A.D.2d 739 …………………………………………………………...12, 15

*D'Amico v. City of New York*, 132 F.3d 145, 149 (2nd Cir.)
cert denied, 480 U.S. 932, S. Ct. 1570, 94 L.Ed. 2d 762 (1987) …………………………….3

*El Gamayel v. Seaman*, 72 N.Y.2d 701 (1988)…………………………………………...3, 4, 9

*Farrar v. Archer*, 125 A.D.2d 953 (4th Dept. 1986)………………………………………...16

*Florida Bar v. Rapoport*, 845 So.2d 874 (Fla. 2003)…………………………………………...6

*Gair, Gair & Conason, P.C.*, 123 A.D.2d 556 (1st Dept. 1986)…………………………...21

*Graham v. Corona Group Home*, 302 A.D.2d 358, 359 (2nd Dept. 2003)………………...15

*Grasso v. Kubis*, 198 A.D.2d 811 (4th Dept. 1993)…………………………………………...12

*In Re Glatthaar*, 40 Conn. L. Rptr. 237 (2005)
2005 LEXIS 2876, 2005 WL 3047275…………………………………………………………...6

*In Re McDonald*, 318 B. R. 37 (E.D.N.Y. 2004)…………………………………………...9

*In Re Perez*, 327 B.R. 94 (E.D.N.Y. 2005)…………………………………………...4

*In Re Roel*, 3 N.Y.2d 224 (1957)…………………………………………...4, 9

*Jontow v. Jontow*, 34 A.D.2d 744 (1st Dept. 1970)…………………………………………...11

*Kailasanathan v. Mysorek*, 234 A.D.2d 425, 426 (2nd Dept. 1996) ..........................14

*Matter of Aranda*, 32 A.D.2d 58 (1st Dept. 2006)..........................................16, 17

*New York Criminal and Civil Courts Bar Ass'n v. Jacoby*,
61 N.Y.2d 130 (1984)..................................................................................5, 9

*Oberman v. Reilly*, 66 A.D.2d 686 (1st Dept. 1978)...........................................12

*Proner v. Julien & Schlesinger*, 134 A.D.2d 182 (1st Dept. 1987).......................20, 21

*Scotto v. Almenas*, 143 F.3d 105 (2nd Cir. 1998) .................................................3

*Servidone v. St. Paul Fire & Marine*,
911 F. Supp 560 (N.D.N.Y. 1995)...............................................................4, 5, 7

*Spanos v. Skouras Theatres Corporation*,
235 F. Supp 1 (S.D.N.Y. 1964) ......................................................................4

*Spivak v. Sachs*, 16 N.Y.2d 163 (1965)..........................................................4, 9

*Sterling v. Miller*, 2 A.D.2d 900 (2nd Dept. 1956)................................................19

*Teitelbaum Holdings v. Gold*, 48 N.Y.2d 51 (1979).......................................14, 15

*White v. Continental Casualty*, 9 N.Y.3d 264 (2007)...........................................17

*Williamson v. Quinn*, 537 F. Supp 613 (S.D.N.Y. 1983)...............................8, 9, 10

*Witt v. Cohen*, 192 A.D.2d 528 (2nd Dept. 1993)................................................12

*W.W.W. Associates v. Giancontieri*, 77 N.Y.2d 157 (1990)...................................14

## STATUTES

Judiciary Law § 478...................................................................................3

Judiciary Law § 484...................................................................................3

CODE OF PROFESSIONAL RESPONSIBILITY, COURT RULES AND
ETHICS OPINIONS

DR 2-106(D)[1200.11(D)]...............................................................................8

DR 2-107(A)[1200.12(A)]...............................................................12, 17, 19

DR 3-101(B)[1200.16(B)]..............................................................................3

22 N.Y.C.R.R. § 520.11(a)............................................................................9

NYCLA Eth. Op. 715 (1996), WL 592658
(N.Y. Cty. Law Assn. Prof. Eth.)............................................................12, 16

TREATISES AND ARTICLES

*New York Jury Instructions* (2nd Ed. 2007) Vol. 2 § 4:30....................................15

Mallen and Smith, *Legal Malpractice* (2005 Ed.) § 5.9.......................................17

*Recent Ethics Opinions on the Unauthorized Practice of Law,*
New York Professional Responsibility Reporter, October 2007...............................5

Roy Simon, *Simon's New York Code of Professional
Responsibility Annotated* (2006 ed.).............................................................13

# PRELIMINARY STATEMENT

Prudential Equity Group, LLC ("PEG") commenced this interpleader action, on or about June 12, 2007, against various lawyers and law firms who claim part of a legal fee resulting from an arbitration award issued, on or about May 18, 2006, against PEG in favor of Charanjit Sahni, Harpreet Sahni, Nasimang Enterprises, AVV/Nasimang Trust by Nand Sahni and Charanjit Sahni; Charanjit Sahni Custodian Angad Sahni Utma; and Charanjit Sahni Custodian Simran Sahni Utma ("Sahni Clients") by the New York Stock Exchange ("NYSE"). This award was confirmed by Judge Walter B. Tolub, Supreme Court, New York County, in a decision dated December 16, 2006.

The Sahni clients received their portion of the award and PEG was seeking to deposit the remaining money in court to allow the attorneys to resolve the division of the fees without PEG's involvement. In an Order, dated August 1, 2007, the Court granted PEG's request and the fees in dispute were deposited with the court system and are earning interest. The co-defendants/cross claimants filed answers and replies, exchanged documents and conducted depositions of co-defendants Thomas Ajamie, Esq. ("Ajamie"), Robert H. Weiss, Esq. ("Weiss") and John Moscow, Esq. ("Moscow").

The facts are fully described in the accompanying affidavit of Robert H. Weiss and a Statement pursuant to Rule 56.1. The facts, briefly stated, are that Weiss entered into a signed retainer agreement with the Sahni clients to represent them against PEG before the NYSE on a contingency fee basis. Weiss performed legal services on their behalf. Approximately six months later, Weiss recruited Ajamie to act as co-counsel on the matter. Weiss and Ajamie executed a fee sharing agreement and they were to share the legal fee 50% each. The agreement was subsequently amended to provide that

Ajamie would receive 66% of the fee and Weiss 34% to be in line with the responsibility Ajamie had taken in the proceeding. Weiss was, and continues to be, the only attorney that executed a retainer agreement with the Sahni Clients.

During the course of the Sahni proceedings Ajamie entered into various fee agreements with other lawyers (i.e., the cross-claimants and former cross-claimants) to perform work on the case, without consulting Weiss and without his approval. These other lawyers are seeking enforcement of these fee agreements in this interpleader action.

By this motion, Weiss seeks summary judgment, or partial summary judgment, pursuant to Federal Rule 56. This motion is predicated upon four contentions:

> (i)  Ajamie is not admitted to practice law in the State of New York and he conducted an NYSE Arbitration in New York, therefore, he engaged in the unauthorized practice of law and is not entitled to a fee for work performed in New York;
>
> (ii)  Ajamie had no written retainer with the Sahni Clients, and, therefore, his only right to a fee is derived from Weiss's attorney-client relationship; alternatively,
>
> (iii)  Weiss and Ajamie executed a fee sharing agreement and the agreement is enforceable as a matter of law, notwithstanding certain factual disputes about the agreement; and,
>
> (iv)  Ajamie engaged the services of other lawyers during and after the NYSE proceeding, without permission or authority of Weiss, the only attorney with a retainer with the client, and in contravention of a fee sharing agreement; therefore, they should seek their fee directly from Ajamie and not from the disputed funds held by the court.

Ajamie will raise numerous factual disputes with respect to this motion, but these factual disputes will not preclude this Court from deciding the above issues in favor of Mr. Weiss as a matter of law. Weiss's Rule 56.1 Statement and undisputed exhibits establish the necessary facts for the relief sought herein.

# ARGUMENT

## I.

### IN ORDER FOR A LAWYER TO RECEIVE A LEGAL FEE FOR PROVIDING LEGAL SERVICES IN FURTHERANCE OF AN ARBITRATION LOCATED IN NEW YORK THE LAWYER MUST BE ADMITTED TO PRACTICE LAW IN NEW YORK OR BE ADMITTED *PRO HAC VICE* AND, THEREFORE, AJAMIE, AS A TEXAS ADMITTED LAWYER, IS NOT ENTITLED TO ANY FEE RELATED TO WORK IN NEW YORK

A court may grant summary judgment only if it concludes that there is no genuine dispute as to any material fact and that based upon the undisputed facts, the moving party is entitled to judgment as a matter of law. *See, Scotto v. Almenas*, 143 F.3d 105, 114 (2nd Cir. 1998); *D'Amico v. City of New York*, 132 F.3d 145, 149 (2nd Cir.) cert denied, 480 U.S. 932, S. Ct. 1570, 94 L.Ed.2d 762 (1987). In the instant case it is undisputed that Ajamie was only admitted in Texas and he was not admitted in New York. It is also not disputed that he was not admitted *pro hac vice* while conducting the Sahni's extensive arbitration in New York that lasted over four years. Thus, for the reasons explained below, Ajamie engaged in the unauthorized practice of law as a matter of law and he should receive no fee for his work performed in New York in the Sahni matter and from the monies deposited in Court.

It is indisputable that a non-lawyer or an out-of-state lawyer may not engage in the practice of law in the State of New York. *See*, Judiciary Law §§ 478, 484; DR 3-101(B)[1200.16(B)] The typical civil remedy when an out-of state lawyer practices in New York is a denial of a legal fee. *See, e.g., El Gemayel v. Seaman*, 72 N.Y.2d 701, 705 (1988) ("as a matter of public policy, a contract to provide services in

violation of the [unauthorized practice] statute is unenforceable"). Notwithstanding

today's world of multi-jurisdictional practice, the right to practice law remains primarily

based upon the geographical location of the legal services performed

 The basic principle underlying the unauthorized practice of law was enunciated in

the seminal case of *Spivak v. Sachs*, 16 N.Y.2d 163 (1965) and it remains viable today.

In *Spivak* the Court found that a California lawyer could not come to New York and give

legal advice on a matrimonial matter to a New York resident by, among other things,

spending 14 days in New York, attending meetings, reviewing drafts of a separation

agreement and discussing the client's problems. *Id.* at 168; *Cf. Spanos v. Skouras

Theatres Corporation*, 235 F. Supp 1, 11 (S.D.N.Y. 1964) (limited consulting work for

New York lawyers would not preclude receipt of fee for the unauthorized practice); *El

Gemayel v. Seaman,* 72 N.Y.2d at 704 (it is not the practice of law in New York when the

"bulk" of services were performed in Lebanon).

 It is beyond dispute that whether a lawyer appears in court is not dispositive of an

unauthorized practice issue. *See, Servidone v. St. Paul Fire & Marine*, 911 F. Supp 560,

565 (N.D.N.Y. 1995)("It is well settled that practicing law is much broader than simply

appearing before a court during a legal proceeding."); citing *In Re Perez*, 327 B.R. 94

(E.D.N.Y. 2005).  It is also of no moment that the questions of law in a matter do not

involve New York law.  The focus must be on the nature of the activities performed not

the source of the law which the lawyer practices. *See, In Re Roel*, 3 N.Y.2d 224

(1957)(otherwise an attorney only practices law when he deals with local law, "a

manifestly anomalous statement"); *Servidone v. St. Paul Fire & Marine*, 911 F. Supp at

567 (a question of federal law still involved the practice of law in New York).

An attorney improperly practicing law in New York is not remedied by merely affiliating with a New York attorney. The Court in *New York Criminal and Civil Courts Bar Ass'n v. Jacoby*, 61 N.Y.2d 130, 136 (1984) noted that, " . . . an attorney, who is not licensed to practice law in New York, even if he is associated with a properly constituted law firm in New York, may not 'practice' law in this state." On this point, Professor Roy Simon, a well-respected ethicist, explained the holding in *Servidone v. St. Paul, supra:*

> . . . the court refused to enforce a New York law firm's retainer agreement for over $4.1 million in legal services  because the services had been performed by a partner who was admitted only in Maryland but maintained his law office in New York. Citing Judiciary Law § 478 . . . the court held that the out-of-state lawyer was engaged in the unauthorized practice of law even when advising on federal law and therefore entitled to no fee.

*Recent Ethics Opinions on the Unauthorized Practice of Law,*
New York Professional Responsibility Reporter
October 2007, p.1, 5.

Multi-jurisdictional practitioners were forced to focus on this issue when the Supreme Court of California decided the watershed decision of *Birbrower, Montalbano, Condon & Frank v. Esq. Business*, 17 Cal. 4th 119, 949 P.2d 1, 70 Cal. Rptr.2d 304 (1998). The Birbrower court partially denied a legal fee to a New York law firm for negotiating and potentially arbitrating a business dispute in California. In *Birbrower*, a New York law firm represented a California company in a commercial dispute. The law firm performed substantial work in California and initiated an arbitration proceeding.

The matter was settled shortly thereafter. The California Supreme Court refused to allow the New York law firm to recover fees for work performed in California.[1]

Other states have deemed arbitrations the practice of law. For example, in 2003 the Florida Supreme Court upheld an injunction prohibiting a District of Columbia lawyer from representing a party in federal securities arbitrations. *See, Florida Bar v. Rapoport*, 845 So.2d 874 (Fla. 2003). Florida has since amended its practice rules. In a case in Connecticut a trial court held that it had no authority to permit a New York lawyer to conduct an arbitration in Connecticut. *See, In Re Glatthaar*, 40 Conn. L. Rptr. 237 (2005), 2005 LEXIS 2876, 2005 WL 3047275.

In the instant case the issue is whether a Texas attorney must be admitted in New York or admitted *pro hac vice* to handle an NYSE arbitration in New York on behalf of New York residents based upon a claim that arose in New York. There is no dispute that Ajamie was admitted solely in Texas and handled, for the most part, the Sahni arbitration in New York that lasted over four years. (56.1 Statement ¶ 9, 37-41) He appeared in New York, for among other reasons, to prepare witnesses, to meet with his New York clients to conduct in excess of 80 Hearing Sessions. He admitted he provided legal advice to the Sahni Clients in New York. (56.1 Statement, ¶ 40) In fact, although he retained counsel to act as attorney of record in a motion to recuse one of the arbitrators, he was the attorney who decided the motion should be filed, he drafted an affidavit for the motion and the motion was governed, in part, by New York law. (56.1 Statement ¶¶ 25-26) In short, the connection to New York is almost complete:

- The Clients were residents of New York;

---

[1]  California amended its practice rule in response to *Birbrower*.

- The only retainer agreement (with Weiss) was signed by the clients in New York;

- The cause of action occurred in New York;

- The preparation of witnesses occurred in New York;

- Meetings with the Sahni Clients were in New York;

- Motion practice, including a recusal of an arbitrator, was submitted to a New York State Supreme Court;

- Ajamie drafted an affidavit to be used in the recusal motion submitted to a New York Court; and,

- An extensive four year arbitration was conducted in New York.

Therefore, the issue before this Court is a straightforward question of law – should Ajamie, a Texas lawyer, receive a legal fee for extensive work conducted in an arbitration in New York.

The strong public policy for strictly enforcing the unauthorized practice rule, is New York's ability to regulate the practice of law within its borders and to protect the public. *See, Servidone v. St. Paul Fire & Marine*, 911 F. Supp at 564. This is true for all practitioners, including arbitration practitioners, because otherwise an attorney can come into this jurisdiction without any connection to the state or a New York client and litigate an arbitration without any control by the local regulatory authorities or courts. If a Texas lawyer engages in misconduct the only remedy for the client, the regulatory authorities and the public is the hope that the attorney's home state will take action. However, if the

rules are different between the two states, New York will have to be content with a lawyer in New York complying only with the ethical rules of another jurisdiction.

This is precisely the problem in the instant case. Ajamie is a Texas lawyer with no direct connection to New York State or the Sahni Clients. Indeed, Ajamie did not even have a retainer agreement with the Sahni Clients. The only lawyer with a retainer was Mr. Weiss.

Parenthetically, to enforce a contingency agreement under New York's Code of Professional Responsibility ("Code") a lawyer must have a written agreement with a client. *See*, DR 2-106(D)[1200.11(D)]. Consequently, Ajamie is attempting to enforce a fee agreement, excluding Weiss, but Weiss's retainer agreement with the Sahni Clients is the only basis for Ajamie collecting a fee.

Notwithstanding the New York cases cited above, and important policy considerations, there is one old case that has been outdated for a long time, but it must be addressed because it has not been overruled. In *Williamson v. Quinn,* 537 F. Supp. 613 (S.D.N.Y. 1982) a New Jersey lawyer appeared in a New York construction arbitration and the Court permitted the lawyer to recover a legal fee, notwithstanding the client's claim that he was not authorized to practice law in New York.

One reason the *Williamson* case is obsolete is that the Court stressed that arbitrations are informal and did not have the type of extensive process that occurred in a trial court. This has not been true for many years and the Sahni arbitration is a perfect example. The Sahni arbitration involved in excess of 80 arbitration hearing sessions that included extensive document production and in-depth testimony by many fact and expert witnesses. The arbitration process took over four years. This arbitration, and arbitrations

- 8 -

generally, are not the simplistic informal proceedings that the Court was familiar with in 1982.

The Court in *Williamson* also noted that an arbitration must be distinguished from a civil litigation because there was no mechanism for applying for *pro hac vice* status to appear in an arbitration. It would be difficult to determine whether that was true in 1975, but it is not true now. An out-of-state lawyer in good standing in another state may apply to, " . . . any court of record, to participate in any matter in which the attorney is employed." 22 N.Y.C.R.R. § 520.11(a). A simple application to the New York Court of Appeals would satisfy any issue in this regard.

The Court in *Williamson* also relied heavily, almost entirely, upon a Report by the then-Association of the Bar of the City of New York (now City Bar) issued in 1975 that suggested an arbitration is not the practice of law. At the same time, the Court in *Williamson* concedes that its decision is not based upon any New York precedent (*Id.* at 616) and this is extremely important because it is indisputable that New York law governs unauthorized practice issues, even in federal court. *See, e.g., In Re McDonald,* 318 B. R. 37, 47 (E.D.N.Y 2004). Indeed, the *Williamson* Court ignored *Spivak v. Sachs,* 16 N.Y.2d 163 (1965) and *In Re Roel,* 3 N.Y.2d 224 (1957). Moreover, shortly after the *Williamson* decision, the New York courts decided *El Gemayel v. Seaman, supra*; and, *New York Criminal and Civil Courts Bar Ass'n v. Jacoby, supra,* which emphasized that the New York courts were not willing to compromise upon the enforcement of the statutes governing the unauthorized practice of law.

The Court in *Spivak* explained, " . . . recognizing the numerous multi-State transactions and relationships of modern times , we cannot penalize every instance in

which an attorney from another State comes into our State for conferences or negotiations relating to a New York client and a transaction somehow tied to New York. We can decide those cases when we get them but they are entirely unlike the present one."

This reasoning is apropos here because Ajamie was not in New York for a limited negotiation. Ajamie handled a complex and extensive arbitration in New York and not a short term, limited, temporary appearance in New York. Therefore, this was not a close call, particularly for an experienced multi-jurisdictional practitioner like Ajamie. This is certainly true in light of the decisions prior to and post *Williamson*. Ajamie was clearly on notice – come into New York and conduct an arbitration at your peril without being admitted *pro hac vice*.

Weiss respectfully requests that this Court deny Ajamie a legal fee for his work in New York in the Sahni arbitration because he knew or should have known that he was in violation of New York's unauthorized practice rules.

## II.

**WEISS WAS THE ONLY ATTORNEY WITH A RETAINER AGREEMENT WITH THE SAHNI CLIENTS AND HE WAS JOINTLY RESPONSIBLE FOR THE CLIENTS' CASE; THEREFORE, HIS AGREEMENT WITH AJAMIE TO SHARE IN THE SAHNI'S LEGAL FEE IS ENFORCEABLE AS A MATTER OF LAW**

It is undisputed that: Weiss entered into a retainer agreement with the Sahni clients for a contingency fee (56.1 Statement, ¶ 5); approximately six months later Ajamie and Weiss entered into a fee sharing agreement in which each attorney would each receive 50% of the fee (56.1 Statement, ¶ 14); subsequently, Weiss and Ajamie

amended the agreement to change the fee split to 66% for Ajamie and 34% for Weiss (56.1 Statement, ¶¶ 20-24); the amended fee agreement does not state that Weiss must perform any legal services to receive his fee; to the contrary, the agreement unequivocally specifically states Ajamie will handle the Sahni matter and try the Sahni's case. (Exhibit L)  Based upon these indisputable facts, the parties entered into an amended fee agreement that is clear on its face and must be enforced without reference to extrinsic evidence, including the work performed by Weiss post-amended fee agreement. (Exhibit L)

Admittedly, there are distinct factual disputes with respect to the circumstances surrounding the execution of the amended fee agreement.  Nonetheless, Weiss claims the amended agreement is enforceable as a matter of law, notwithstanding the factual disputes between the parties.

The Second Circuit has held that when a federal court is required to interpret a contractual attorney fee provision that the court should apply state law. *See, Alderman v. Pan Am*, 169 F.3d 99, 103 (2nd Cir. 1999).  In New York, a fee sharing agreement between attorneys has long been enforceable. *See, e.g., Jontow v. Jontow*, 34 A.d.2d 744 (1st Dept. 1970) ("Where there is an express contract for compensation an action will not lie for *quantum meruit* . . . And this principle is applicable to the awarding of attorney's fees . . ."); *See, e.g., Aiello v. Uriel*, 193 Misc.2d 649, 653 (Sup. Ct. N.Y. Cty. 2002).

The enforcement of a fee sharing agreement is one of the few areas of practice for which the courts rely upon the ethics rules for guidance on questions of law. *See, e.g., Id.* at 655.  Consequently, the rules governing the enforcement of fee sharing agreements changed dramatically in 1990 when the New York Code of Professional Responsibility

- 11 -

("Code") was amended. These changes to the Code had a significant and substantive effect on fee sharing agreements.

Prior to the change, a lawyer who referred a matter to another lawyer had to do work on the case **and** take responsibility in order for the agreement to be in compliance with the Code and, thereby, enforceable as a matter of law. *See, e.g., Oberman v. Reilly,* 66 A.d.2d 686 (1st Dept. 1978). It was uniformly held that a court would enforce a fee sharing agreement as long as "some" work was performed by the referring attorney. It would not look to the precise work performed. *See, Cohen v. Bayger,* 269 A.D.2d 739 (4th Dept. 2000). Although the word "some" was used by many courts it was not specifically defined. *See, e.g., Grasso v. Kubis,* 198 A.d.2d 811, 812 (4th Dept. 1993); *Witt v. Cohen,* 192 A.D.2d 528 (2nd Dept. 1993). The decisions implicitly suggest that only a minimal amount of work was necessary to establish "some" work. For example, one court found that some work, ". . . may be rendered even merely by correspondence." *Carter v. Katz, Shandell, Katz & Erasmous,* 120 Misc.2d 1009, 1018 (Sup. Ct. N.Y Cty. 1983).

However, the Code **as amended**, which is still in effect, now provides two options to an attorney who seeks to bring in another attorney to work on a case and to enter into a fee sharing agreement. The originating lawyer may **either** do some work on the case **or** simply remain jointly responsible. DR 2 -107(A)[1200.12A]. *See,* NYCLA Eth. Op. 715 (1996); *Aiello v. Uriel,* 193 Misc.2d at 659. Professor Roy Simon explained this significant change in the rule:

> In 1990, New York significantly revised the Code, including DR 2-107(a). The 1990 Code (which is still in force) reverted to the old ABA Canon 34 formulation allowing a division of fees based *either* on service *or* responsibility. The 1990 Code also kept the

other fee sharing conditions from the 1970 New York version of DR 2-107(A). Thus, a lawyer may properly receive a share of the fee **simply for referring a matter** to another lawyer **without doing any of the work**, provided (1) the referring lawyer assumes "joint responsibility" for the matter, (2) the client consents after notice, and (3) the two lawyers together charge a reasonable total fee. (some emphasis added and some in the text.)

Roy Simon, *Simon's Code of Professional Responsibility Annotated* (2006 Ed.) p. 338.

  Undoubtedly, there is a sharp factual dispute with respect to whether Weiss refused to do work on the case. Weiss contends that he performed work early in the case and was locked-out by Ajamie shortly after he joined the case. Ajamie claims Weiss did not cooperate and did not complete sufficient work to allow him to enforce their agreement. However, this factual dispute has no bearing on the narrow issue before this court with respect to enforcement of the **amended** fee sharing agreement.

  It is undisputed that the amended fee sharing agreement, entered into on or about February 16, 2004, superseded the First Fee Agreement, entered into on or about October 31, 2002. (Exhibits G, L; 56.1 Statement ¶¶ 15, 21, 24) The amended agreement, in pertinent part, reads:

> We agree to amend that agreement to reflect that Ajamie, L.L.P. will receive 66% of all fees recovered in this case, and Robert H. Weiss & Associates, P.C. will receive 34% of all fees recovered. Mr. Ajamie agrees **to handle the case and continue to try it before the NYSE panel.**

  Whatever disagreement the parties may have had with respect to Weiss's work before this time, the amended agreement is clear on its face. The percentages were being changed and Ajamie will "handle the case" and "continue to try it." The parties to the Amended Fee Agreement were experienced attorneys. Ajamie worked for a large national firm and handled securities cases across the country. (56.1 Statement, ¶ 9) If

- 13 -

Ajamie expected Weiss to perform work Ajamie would not have clearly stated in unambiguous terms that he – Ajamie – would handle the case.

The New York Court of Appeals in *Chimart Associates v. Paul*, 66 N.Y.2d 570 (1986) addressed a written agreement between two sophisticated, counseled businessmen. One of the parties was seeking to enforce an agreement, by a summary judgment motion, based upon a clear language of the agreement and the adversary was attempting to defeat the motion by relying upon oral negotiations. The court stated that:

> Where a written agreement between sophisticated, counseled businessmen is unambiguous on its face, one party cannot defeat summary judgment by a conclusory assertion that, owing to mutual mistake or fraud, the writing did not express his own understanding of he oral agreement reached during negotiations.

The Court granted summary judgment and quoting *Teitelbaum Holdings v. Gold*, 48 N.Y.2d 51, 56 (1979) held that:

> '[i]nterpretation of an unambiguous contract provision is a function for the court and matters extrinsic to the agreement may not be considered when the intent of the parties can be gleaned from the face of the instrument.'

The New York Court of Appeals made it clear that in a contract dispute whether or not a writing is ambiguous is a question of law to be resolved by the court. *W.W.W. Associates v. Giancontieri*, 77 N.Y.2d 157, 162 (1990). The Court also made it clear in *W.W.W. Associates* that before looking into evidence of what was in the parties' minds that it is "vital" that a court first give due weight to what was in their contract. *Id; see also Kailasanathan v. Mysorek*, 234 A.D.2d 425, 426 (2nd Dept. 1996)("Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing").

In *Cohen v. Bayger*, 269 A.D.2d at 741 the Court applied the holding in

*Teitelbaum* and *Chimart* in the context of an attorney fee dispute. The Court stated

> It is well settled that the interpretation of an unambiguous
> contract provision is a function for the court and that
> circumstances extrinsic to the agreement will not be
> considered when the intention of the parties can be
> gathered from the face of the instrument.

*See also, Graham v. Corona Group Home*, 302 A.D.2d 358, 359 (2nd Dept. 2003)("The

letter agreement, drafted and signed by the receiving attorney, was unambiguous in its

terms, and parol evidence was inadmissible to vary them").

It is particularly telling that the New York State Pattern Jury Instructions confirm

the point. It states that:

> The interpretation of an unambiguous fee splitting agreement
> is for the court and extrinsic evidence will not be considered
> when the intent of the parties can be gleaned from the face of
> the instrument. [citations omitted.]

New York Jury Instructions (2nd Ed. 2007), Vol.2, § 4:30, p. 766.

Thus, the parties dispute regarding the amount of **work done after the amended**

**agreement** is not relevant here because the amended agreement does not require any

work by Weiss. Thus, Ajamie's recent allegations about the lack of work not performed

by Weiss post-Amended Fee Agreement may not be asserted to contradict the plain

language of the agreement. Although unnecessary for this argument, Weiss would also

ask the court to take judicial notice that a one-third fee split is customary in matters in

New York when the referring attorney relies on joint responsibility and not on work in

order to ethically support a fee sharing agreement.

The only requirement for Weiss to enforce the amended agreement, based upon

the above authorities, is for him to have remained jointly responsible for the

representation and this has been established by indisputable evidence. Weiss was the only attorney who executed a retainer agreement with the client. (Exhibit D; 56.1 Statement ¶ 5) This agreement, even without more, deems Weiss responsible for any action taken in the case. Weiss was also responsible for bringing in Ajamie to act as co-counsel and then as primary counsel. This too creates a professional responsibility upon Weiss. *See, Matter of Aranda*, 32 A.D.2d 58 (1st Dept. 2006).

Weiss also sent a letter to the client after the Amended Fee Agreement reaffirming his agreement with client and their original retainer. (Exhibit M) Moreover, Weiss was the original attorney of record in the NYSE arbitration and he never moved to withdraw from the representation and the Sahni clients never terminated his representation. (Rule 56.1 Statement ¶¶ 43-44) Ajamie never sought to execute a separate retainer agreement with the clients or to terminate or re-amend the Amended Fee Agreement. (56.1 Statement ¶ 13; A. Dep. 49; A. Admit No. 9; A. Answer ¶ 10). In short, Weiss was the only New York lawyer with a contractual relationship with the Sahni Clients.

One local bar association opinion and one local court have held that as long as the referring attorney remains responsible financially and ethically on a case it is sufficient joint responsibility. *See*, NYCLA Eth. Op. 715 1996, WL 592658 (N.Y. Cty. Law Assn. Prof. Eth.); *See also Aiello v. Uriel*, 193 Misc.2d at 660. The undisputed facts demonstrate that Weiss remained an attorney of record and the only attorney with a retainer agreement with the client and these facts alone make Weiss jointly responsible. *See, Id.; Farrar v. Archer*, 125 A.D.2d 953, 954 (4th Dept. 1986) (an attorney of record cannot absolve himself of responsibility to his client by merely transferring the file). *See*

*generally*, Mallen and Smith, *Legal Malpractice* (2005 Ed.) § 5.9. It is also true that an attorney remains responsible for a client and their case for any disciplinary ramifications, even if the matter is referred to another attorney. *See, Matter of Aranda, supra.*

In short, under current New York authority, Weiss was jointly responsible for the Sahni case and may share in the fee even though he performed a minimum of work after the Amended Fee Agreement.

To the degree this Court would consider equitable relief notwithstanding the agreement, the New York Court of Appeals has made it clear that generally when a contract on "...its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity." *White v. Continental Casualty*, 9 N.Y.3d 264 (2007).

In an attempt to avoid Weiss's enforcement of the amended agreement, it is expected that Ajamie will argue that: Weiss was required to perform "some" work and did not do so; and, Weiss affirmatively refused to perform work and this is basis not to enforce the parties' agreement. Weiss denies both allegations, but this dispute has no impact on this motion because a careful review of the case law demonstrates these are not relevant issues with respect to this motion.

As mentioned above, there is a long line of older cases that hold that to enforce a fee sharing agreement "some work" must be performed by the referring or originating attorney. However, as also explained above, after the Code's 1990 amendment, which made a joint responsibility arrangement ethical, these cases became inapplicable. *See,* DR 2-107(A)[1200.12(A)]. It is abundantly clear, the attorney may perform services **or**

assume joint responsibility, but there is no current requirement that the attorney do both. Thus, any argument that Weiss was required to perform work is inapplicable.

Nonetheless, to the extent the Court will consider the work Weiss performed, the accompanying affidavit of Weiss and the Rule 56.1 Statement confirm that Weiss: met with the Sahnis; completed the retention; interviewed Mr. Sahni to obtain sufficient information to commence a case; obtained documents from former counsel, who initially refused to turn over the documents; sought documents from Mr. Sahni; interfaced with Prudential's counsel until Ajamie was brought into the case and took the lead; conducted a sufficient inquiry to commence a proceeding; conducted legal research; drafted and filed a somewhat complicated Statement of Claim; met with witnesses and the clients; consulted and retained experts, whom Ajamie consulted; and, attended multiple hearing sessions.

Weiss performed more work than the originating attorney in *Aiello v. Uriel, supra,* which was deemed sufficient by the court for the fee sharing rule prior to the Code's amendment. In *Aiello,* the attorney only did preliminary work necessary for preparing and serving a simple summons and complaint, consulted an expert and obtained some medical records. Clearly Weiss performed significantly more services to the degree it is relevant. *See, also, Carter v. Katz, Shandell, Katz & Erasmous, supra* (correspondence was deemed "some" work).

Ajamie's other fallback position will certainly be that Weiss refused to work on the case after the Amended Fee Agreement was executed and  pursuant to *Benjamin v. Koeppel,* 85 N.Y.2d 549 (1995), this precludes enforcement of the agreement.  However,

a careful review of the *Benjamin* case, which was decided after the Code's 1990

amendment, completely undermines the applicability of the case to the instant facts.

In *Benjamin*, the Court states, in *dicta*, that an attorney may not be able to recover

under a fee sharing agreement if the attorney refuses to work. However, this case relates

to agreements based solely upon each attorney's commitment to perform a certain

amount of work **and not joint responsibility**. This is discerned from the fact that the

case makes no reference to a joint responsibility agreement, which would be critical to

the analysis. Moreover, under a joint responsibility agreement the originating attorney is

not required to perform any work under the clear language of DR 2-107(A)[1200.12(A)]

and the Court would never have ignored this issue if there was such an agreement in light

of the amended disciplinary rule. Finally, all the cases cited to support the Court's

decision were decided prior to the DR 2-107's amendment. In other words, all the cases

cited in *Benjamin* relate to an agreement in which both attorneys had to perform some

work under the old rule. *See, e.g., Sterling v. Miller*, 2 A.D.2d 900 (2nd Dept. 1956).

In short, the cases that reference an attorney's refusal to work as being an element

of enforcing a fee sharing agreement are either pre-amendment or do not involve a joint

responsibility agreement.

Parenthetically, the record is devoid of any written document (e-mail,

correspondence, etc.) reflecting that Ajamie complained in writing about Weiss's lack of

work after the Amended Fee Agreement. Although credibility is not controlling for a

summary judgment motion, if Ajamie is to be believed, the Court must accept that: Weiss

refused to perform work under their original agreement for over a year and a half and

Ajamie did not insist on an amended agreement that specified Weiss must share in the

work.  Instead, Ajamie agreed to an agreement stating that Ajamie would **handle the case and continue to try it.**  This stretches credulity to the limit.

### III.

### AJAMIE BREACHED HIS FEE SHARING AGREEMENT WITH WEISS WHEN HE RETAINED OTHER COUNSEL WITHOUT PERMISSION OR NOTICE TO WEISS AND, THERFORE, AJAMIE IS SOLELY RESPONSBILE FOR LEGAL FEES FOR THE ADDITIONAL OUTSIDE COUNSEL

It is undisputed that Ajamie and Weiss's Amended Fee Sharing Agreement specifically states that Ajamie will **handle and try** the Sahni case.  (Exhibit L)  There is no mention in the agreement that Ajamie will retain other outside counsel to assist him and his firm and that the legal fees attributable to these counsel would be deducted from Weiss's share of the legal fee.  It is also undisputed that Ajamie entered into a fee sharing agreement with cross-claimant Moscow and other cross-claimants to assist him without notifying Weiss <u>at the time</u> the counsel were hired.  (56.1 Statement ¶ 31)  Moscow's fee agreement with Ajamie provides Moscow a new large contingency fee if the Sahni Clients received an award or settlement.  (Exhibit O)

Weiss contends that Ajamie is responsible for any legal fees incurred as a result of his hiring outside counsel to assist him without permission of Weiss.  Therefore, all cross-claimants, other than the Kroll firm (for whom Weiss was responsible under the original retainer with the Sahni Clients), must seek their legal fees from Ajamie.

Weiss's contention is supported by *Proner v. Julien & Schlesinger*, 134 A.D. 2d 182 (1st Dept. 1987), which is a case with different facts but a relevant principle of law.

The Court in *Proner* held that when an attorney refers a matter to another attorney pursuant to a fee sharing agreement, the fee division in the agreement should not be affected by the incoming attorney's retaining additional counsel. In other words, if the incoming attorney retains additional counsel this cost should not come out of the referring attorney's fee, but must come out of the incoming attorney's fee. The court held that:

> Absent a specific provision to the contrary, an attorney, such as defendant, to whom the case is referred for purposes of handling it to final disposition will ordinarily be held responsible for absorbing the cost of any additional legal services, such as those of outside trial or appellate counsel, incurred in the course of attaining that final disposition.

As described above, the parties' Amended Fee Sharing Agreement was akin to a referral based upon the language in the agreement that Ajamie would handle and try the case. Consequently, the reasoning of the *Proner* case is applicable here. *See also, Gair, Gair & Conason, P.C.,* 123 A.D.2d 556 (1st Dept. 1986)(Incoming attorneys were undertaking to provide all services necessary to the representation, including appellate services).

Ajamie will raise in response to this argument that the Amended Fee Sharing Agreement gave him the authority to hire outside counsel without specific notice or permission of Weiss. He will point to the agreement's provision that states,

> Mr. Weiss also agrees to pay from his 34% all amounts due to other lawyers or law firms who make a claim or lien against this case. Mr. Weiss will defend, settle or resolve those claims without recourse to you [Ajamie] or the Sahni Family.

Ajamie will claim there was a discussion when the agreement was signed that gave him permission to hire as many attorneys as he chose, for any purpose, at any cost,

without discussing it with Weiss, if Weiss did not perform legal services. He will also take the position that he could hire these outside attorneys and agree to legal fees that could, ultimately, result in Weiss not receiving any legal fee in this case.

Needless to say, Weiss denies any such discussion and would argue that it is simply incredible that: Weiss would have given Ajamie carte blanche to hire outside counsel without his approval; Weiss would allow this in a manner that would have cut him out of 1/3 of a "potential" $7 million fee (1/3 of $22 million claim in the arbitration); and, knowing Ajamie's position, Weiss would have refused to perform services and forfeit part or all of such a large fee after two years on the case.

Nonetheless, this "swearing match" regarding this discussion does not affect Weiss's request for summary judgment because, as fully explained above, this Court should not review extrinsic evidence when the contract is unambiguous on its face.

Specifically, Ajamie's overly broad interpretation of the specific terms of agreement is not memorialized in the agreement. Logic would dictate that the agreement refers to, and could only refer to, claims already incurred and that could be asserted at a later time, which is typical for liens in a contingency fee cases. The agreement indicates that "amounts due to other lawyers...," and "due" suggests claims already owing. This is precisely in line with the Sahni retainer agreement with Weiss in which Weiss agreed to be responsible for any fees and expenses attributed to Kroll's past representation. (Exhibit D) More important, there is no reference to claims to be accrued in the future if Weiss did not perform legal services after the amended fee agreement was executed.

The fact that the Sahni Clients orally acquiesced to other outside counsel is of no moment because the division of fees was a contract between Weiss and Ajamie.

- 22 -

Ajamie's position that he could violate his contract with Weiss to pay him 34% of the fee is unsupported by the language in the Amended Fee Agreement.

Therefore, Weiss respectfully suggests that any and all current and former co-defendants who contracted with Ajamie for legal services must seek their fees from Ajamie and not directly from the disputed funds deposited in Court.

## CONCLUSION

For the reasons stated above and in the accompanying motion, Weiss respectfully requests that this Court grant Weiss's Motion for Summary Judgment or grant any further or different relief this Court deems fair, just or equitable.

Dated: New York, NY
       January 3, 2008

By:_____
      Richard M. Maltz (RM 5627)

RICHARD M. MALTZ, PLLC
488 Madison Avenue, 10th Floor
New York, NY 10022
212-705-4808
347-438-2097 (fax)

Attorney for Robert Weiss and Robert H.
Weiss & Associates, LLP

TO:    Karen D. Coombs, Esq.
        Proskauer Rose LLP
        1585 Broadway
        New York, NY 10036-8299

        Eric J. Grannis, Esq.
        Law Firm of Eric J. Grannis
        620 Fifth Avenue
        New York, NY 10020

John Moss, Esq.
Kroll, Moss & Kroll, LLP
400 Garden City Plaza – Suite 310
Garden City, NY  11530-3322

Michael Malloy, Esq.
Finestein & Malloy LLC
26 Main Street
Chatham, NJ  07928

Robert L. Herbst, Esq.
Beldock Levine & Hoffman, LLP
99 Park Avenue – Suite 1600
New York, NY  10016