UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
PRUDENTIAL EQUITY GROUP, LLC,          :
                                       :
            Plaintiff,                 :        07 Civ. 5606 (JSR)
                                       :
            -v-                        :        OPINION AND ORDER
                                       :
THOMAS R. AJAMIE et al.,               :
                                       :
            Defendants.                :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

        Defendants Robert Weiss and Robert H. Weiss & Associates, LLP

(the "Weiss defendants") and Thomas R. Ajamie and Ajamie, LLP (the

"Ajamie defendants") each move for summary judgment.  For the reasons

set forth below, the motion of the Weiss defendants is granted in

part and denied in part, and the motion of the Ajamie defendants is

likewise granted in part and denied in part.

        This interpleader action arises from a conflict over how the

attorneys' fees resulting from a successful arbitration should be

divided among the attorneys who might have a claim to them and who,

being litigators, were unable to resolve the dispute among

themselves.  In 2002, members of a family known as the Sahnis sought

to arbitrate certain claims against Prudential Equity Group, LLC

("Prudential").  See Weiss Defendants' Statement of Material Facts

Pursuant to Local Rule 56.1 ("Weiss 56.1") ¶ 1; Ajamie Defendants'

Rule 56.1 Counterstatement and Statement of Additional Facts ("Ajamie

56.1") ¶ 1.  The Sahnis first retained defendant Martin Kroll and his

firm, defendant Kroll, Moss & Kroll LLP, but subsequently terminated

the Kroll defendants and retained the Weiss defendants to pursue

their claims.  Weiss 56.1 ¶¶ 3-5; Ajamie 56.1 ¶¶ 3-5.  Weiss then recruited Mr. Ajamie, a lawyer admitted only in Texas, to work on the arbitration, and entered into an original, and, later, an amended fee-sharing agreement with the Ajamie defendants.  Weiss 56.1 ¶¶ 9, 11-12, 14, 20; Ajamie 56.1 ¶¶ 9, 11-12, 14, 20.  Mr. Ajamie, in turn, sought assistance from two other attorneys, defendants Wallace Showman and John Moscow.  Weiss 56.1 ¶¶ 25, 29; Ajamie 56.1 ¶¶ 25, 29.

Although the circumstances are disputed, it is clear that at some point Weiss ceased to play an active role in the arbitration. Weiss 56.1 ¶¶ 18-19; Ajamie 56.1 ¶¶ 19, B-2 to B-3, B-17. Eventually, the Sahni clients were successful in the arbitration against Prudential, and the arbitration award was confirmed in New York state court.  Weiss 56.1 ¶¶ 42, 45; Ajamie 56.1 ¶¶ 42, 45. Prudential, in possession of the attorney's fee portion of the arbitration award, instituted this interpleader action when it became clear that the various attorneys involved in the arbitration could not agree on how the fees should be divided.

In the instant motion, the Weiss defendants argue, first, that the Ajamie defendants are not entitled to any fees; second, that, if the first argument fails, the fees should be split in accordance with the amended fee agreement; and, third, that the Ajamie defendants are solely responsible for the fees of the additional attorneys (Showman and Moscow) who were brought in to assist.  Only the second argument has merit.

As to the first argument, the Weiss defendants contend that
the fee-sharing agreement with the Ajamie defendants cannot be
enforced -- and that the Ajamie defendants are therefore not entitled
to any of the attorneys' fees -- because Ajamie engaged in the
unauthorized practice of law by participating in an arbitration in
New York even though he was not admitted to the New York bar.  Given
that it was Weiss who brought Ajamie into the arbitration, this
argument wins the Oscar for chutzpah.  But on the merits it fails.

Since there is no New York state authority definitively
addressing the applicability of New York's unauthorized practice
rules to the arbitration context, the Court must predict how the New
York Court of Appeals would decide this issue.  See Fieger v. Pitney
Bowes Credit Corp., 251 F.3d 386, 399 (2d Cir. 2001).  But the Court
is not reduced to reading entrails, because in Donald J. Williamson,
P.A. v. John D. Quinn Construction Corp., 537 F. Supp. 613 (S.D.N.Y.
1982), Judge Edward Weinfeld -- perhaps the greatest judge ever to
sit in this District -- held that a non-New York lawyer participating
in an arbitration in New York did not commit unauthorized practice
under New York law.  Id. at 616.  As Judge Weinfeld noted, there are
material differences between an arbitration and a judicial
proceeding, with the former being far more informal and applying much
less stringent rules of evidence and procedure.  Id. at 616.

Williamson has been followed by other courts in this District
and elsewhere, see, e.g., Siegel v. Bridas Sociedad Anonima Petrolera
Industrial Y Comercial, No. 90 Civ. 6108, 1991 WL 167979, *5
(S.D.N.Y. Aug. 19, 1991); Colmar, Ltd. v. Fremantlemedia N. Am.,

Inc., 344 Ill. App. 3d 977, 988 (App. Ct. 2003), and has been praised by commentators, see, e.g., Samuel Estreicher & Steven C. Bennett, Is Arbitration the Unauthorized Practice of Law?, N.Y.L.J., Jan. 6, 2005, at 3 (describing Williamson as "[o]ne of the earliest and most widely quoted authorities in this area").  It may also be noted that in 1975, and again in 1991, committees of the Association of the Bar of the City of New York found that participation in a New York arbitration by an out-of-state lawyer was not the unauthorized practice of law.  See Committee Report, Labor Arbitration and the Unauthorized Practice of Law, 30 Rec. Ass'n B. City N.Y. 422, 428 (1975); Committee Report, Recommendation and Report on the Right of Non-New York Lawyers to Represent Parties in International and Interstate Arbitrations Conducted in New York, 49 Rec. Ass'n B. City N.Y. 47, 47-48  (1991).

     Against this authority, Weiss relies principally on the controversial California decision in Birbrower, Montalbano, Condon & Frank, P.C. v. Superior Court, 949 P.2d 1 (Cal. 1998).  In Birbrower, the California Supreme Court "decline[d] ... to craft an arbitration exception to [the California] prohibition of the unlicensed practice of law in this state." Id. at 9.  Birbrower, however, was promptly overruled by the California legislature.  See Cal. Civ. Proc. Code § 1282.4 (providing an arbitration exception to unauthorized practice rules).  Moreover, even Birbrower itself took pains to distinguish Williamson, see Birbrower, 949 P.2d at 8-9, and thus is of little help in predicting how the New York Court of Appeals would decide this issue.

4

This Court finds Judge Weinfeld's reasoning wholly persuasive and is certain the New York Court of Appeals would find likewise. Although, in the quarter century since Judge Weinfeld wrote, arbitration proceedings have become more protracted and complex, not to mention costly, they still retain in most settings their essential character of private contractual arrangements for the relatively informal resolution of disputes. Indeed, the Court notes that the rules of the New York Stock Exchange, where the Sahni arbitration was held, do not require members of the arbitration panel to be lawyers at all. See N.Y. Stock Exch. Rule 607. It would be incongruous to apply a state's unauthorized practice rules in such an informal setting. Whatever beneficent purposes New York's prohibition against the unauthorized practice of law may serve in protecting clients and regulating lawyers' conduct, it is not designed as a trap for the unwary or as a basis on which New York lawyers can extend a monopoly over every private contractual dispute-resolving mechanism.

Accordingly, the Court concludes that Ajamie was not engaged in the unauthorized practice of law and, hence, that the Weiss defendants are not entitled to summary judgment denying the Ajamie defendants any recovery.[1] There is greater merit, however, to the Weiss defendants' fallback position, their second argument, that they

---

[1] Because Ajamie did not engage in the unauthorized practice of law, the Court need not reach the issue of whether Weiss, having brought Ajamie into the case, would be barred by the doctrine of unclean hands from contending that Ajamie may not recover attorneys' fees.

are at least entitled as a matter of law to some recovery because their fee agreement with Ajamie is enforceable as a matter of law.

After the Weiss defendants were retained by the Sahni clients, they entered into a fee agreement with the Ajamie defendants that provided that:

> This letter sets forth our agreement to work together on behalf of the Sahni Clients. We will jointly represent the Sahni Clients in connection with their securities claims against Prudential Securities, Inc. and all other associated parties with respect to [specific account numbers].
>
> We [the Ajamie defendants] will work with you [the Weiss defendants] on behalf of the Sahni Clients in preparing and presenting their claims against the parties who have caused the Sahni Clients financial loss. We will contribute 50% and you will contribute 50% of the cost and expense necessary to bring these matters to arbitration or settlement, and we will receive 50% and you will receive 50% of all proceeds that your firm is entitled to receive under its retainer agreement with the Sahni Clients.
>
> You have consulted the Sahni Clients and you represent to us that they are aware of our participation in the matter and have consented to it.

Affidavit of Robert Weiss, Exhibit G ("Fee Agreement").

Subsequently, the agreement was amended as follows:

> This agreement will confirm our agreement today to revise our original letter agreement concerning fees and services in this case, dated October 29, 2002.
>
> We agree to amend that agreement to reflect that Ajamie, L.L.P. will receive 66% of all fees recovered in this case, and Robert H. Weiss & Associates, P.C. will receive 34% of all fees recovered. Mr. Ajamie agrees to handle the case and continue to try it before the NYSE panel. Mr. Ajamie will continue to pay all expenses (which he will recover first before the fees are divided 66%-34%).
>
> Mr. Weiss also agrees to pay from his 34% all amounts due to other lawyers or law firms who make a claim or lien against this case. Mr. Weiss will defend, settle or resolve those claims without recourse to you or the Sahni Family.

Affidavit of Robert Weiss, Exhibit L ("Amended Fee Agreement").

The parties concur that these agreements are governed by New York state law. In New York, courts look to ethics rules for guidance in determining whether fee agreements are enforceable. <u>See, e.g.</u>, <u>Benjamin v. Koeppel</u>, 650 N.E.2d 829, 832-33 (N.Y. 1995). New York Disciplinary Rule 2-107(A) provides that:

> A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of the lawyer's law firm, unless:
>
> 1. The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.
>
> 2. The division is in proportion to the services performed by each lawyer <u>or</u>, by a writing given the client, each lawyer assumes joint responsibility for the representation.
>
> 3. The total fee of the lawyers does not exceed reasonable compensation for all legal services they rendered the client.

N.Y. Comp. Codes R. & Regs., tit. 22, § 1200.12 (emphasis supplied).

It is undisputed that the first and third requirements of DR 2-107(A) are here met. As to the second requirement, the parties disagree as to whether the "division is in proportion to the services performed by each lawyer." This dispute is irrelevant, however, because the alternative prong of the second requirement -- that "by a writing given the client, each lawyer assume[d] joint responsibility for the representation" -- is here met.[2]

With respect to "joint responsibility," Weiss was directly retained by the Sahnis and, indeed, was the only lawyer involved in

---

[2] <u>Benjamin v. Koeppel</u>, 650 N.E.2d 829 (N.Y. 1995), relied on by Ajamie, is therefore inapplicable because it relates to the "services performed," rather than the "joint responsibility," prong of DR 2-107(A)(2).

the arbitration who had a retainer agreement directly with the Sahni clients. Weiss 56.1 ¶¶ 5, 13, 33, 35-36, 43; Ajamie 56.1 ¶¶ 5, 13, 33, 35-36, 43. Weiss never sought to withdraw as the Sahnis' counsel and he thus remained responsible for the representation; indeed he would have been liable to the Sahnis in a malpractice action. See Aiello v. Adar, 750 N.Y.S.2d 457, 464-66 (Sup. Ct. 2002) (finding that joint responsibility means "joint and several liability ... for any act of malpractice that occurs" and holding that "remain[ing] the attorney of record in the case ... is an unequivocal indication" that attorney would remain liable for malpractice). The "joint responsibility" requirement is thus satisfied.

As for a "writing given the client," the letter that Weiss and Ajamie provided to the Sahnis to advise them that the fee agreement had been amended confirms that Weiss remained jointly responsible for the case: it informed the Sahnis that the two firms "have been representing [the Sahnis]," that the firms "have revised the cooperation agreement between [the firms]" but that the agreement "does not increase the amount ... that will be payable by [the Sahnis]" and that "[t]he terms of [the Sahnis'] ... retainer agreement with [Weiss's] law firm remain unchanged." Affidavit of Robert Weiss, Exhibit M (letter dated February 23, 2004). The letter ends with: "[t]hank you for your continuing to place your trust and confidence in us." Id. This writing clearly reaffirms for the Sahnis that Weiss remained their attorney and that he continued to take responsibility for the arbitration along with Ajamie. Cf. Robert P. Lynn, Jr., LLC v. Purcell, 835 N.Y.S.2d 664, 666 (App. Div.

2007) (finding that a client letter which stated that two firms will "undertake to represent you" and that the first firm "will work with the [second] firm" was "sufficient to establish that the parties undertook joint responsibility for the representation"). Accordingly, all the requirements of the "joint responsibility" prong of DR 2-107(A)(2) are met.

Ajamie nevertheless tries to avoid summary judgment by arguing that, because Weiss allegedly failed to do any of the actual work on the arbitration once Ajamie entered the case, Weiss never fulfilled his part of the bargain. But the amended fee agreement, in contrast to the original fee agreement, contains no requirement that Weiss work on the arbitration; on the contrary, it expressly provides that "Mr. Ajamie agrees to handle the case and continue to try it before the NYSE panel." Amended Fee Agreement, supra. The amended fee agreement thus makes plain to the Ajamie defendants and to any reasonable reader that Weiss, while remaining jointly responsible for the representation, was delegating the actual trial work to Ajamie and, concomitantly, was now providing Ajamie with a larger share of the fee.

Accordingly, the Weiss defendants are entitled to partial summary judgment enforcing the amended fee agreement as a matter of law.

The Weiss defendants' third argument for summary judgment is that the Ajamie defendants retained other counsel (Showman and Moscow) to work on the arbitration without giving Weiss notice or obtaining his permission, and thus the Ajamie defendants are solely

9

responsible for paying those attorneys.  This argument is
unpersuasive.

Under New York law, "[a]bsent a specific provision to the
contrary, an attorney ... to whom [a] case is referred for purposes
of handling it to final disposition will ordinarily be held
responsible for absorbing the cost of any additional legal services,
such as those of outside trial or appellate counsel, incurred in the
course of attaining that final disposition." A. Stanley Proner, P.C.
v. Julien & Schlesinger, P.C., 520 N.Y.S.2d 771, 773 (App. Div.
1987).  This rule would require Ajamie to pay the attorneys he hired
to work on the arbitration were it not for the fact that the amended
fee agreement contains a "specific provision to the contrary."  Id.
The agreement provides that "Mr. Weiss ... agrees to pay from his 34%
all amounts due to other lawyers or law firms who make a claim or
lien against this case."  Amended Fee Agreement, supra.  This
language is unambiguous in requiring that Weiss pay the fees of the
other attorneys from his portion of the fee.

Weiss argues that the word "due" must mean amounts already
due at the time the agreement was entered into, which would be only
fees due to the Kroll defendants.  This interpretation, however, is
belied by the rest of the sentence -- particularly the use of the
plural ("lawyers" and "law firms") and the use of the subjunctive
("who make a claim or lien").  The only reasonable interpretation of
the term "due," in this context, therefore, is amounts due to any
lawyer or law firm if and when such person or firm actually makes a
claim, rather than amounts due when the agreement was entered into.

10

Accordingly, summary judgment in favor of Weiss on this issue is denied.

Remaining to be considered is the summary judgment motion of the Ajamie defendants. The Ajamie defendants move for partial summary judgment on the portions of the Weiss defendants' cross-claims that are based on claims of breach of contract, repudiation of contract, and violation of the duty of good faith and fair dealing.

Specifically, the Weiss defendants' first cross-claim, entitled "Breach of Contract," is based on the premise that the Ajamie defendants "have denied [the Weiss defendants] their portion of the legal fees from the Sahni settlement by repudiating the parties' Amended Fee Agreement." The Weiss Defendants' Answer to Complaint for Interpleader and Claim ("Weiss Answer") ¶ 77. This "repudiati[on]" occurred, according to the Weiss defendants, when the Ajamie defendants "sued Weiss in Texas seeking to deny Mr. Weiss any legal fee and to repudiate the validity of their agreement." Id. at 74.

Under New York law, a party claiming a breach of contract must show 1) a contract, 2) adequate performance by the party, 3) breach by the other party, and 4) damages. 24/7 Records, Inc. v. Sony Music Entm't, Inc., 429 F.3d 39, 41-42 (2d Cir. 2005). The breach of the amended fee agreement that the Weiss defendants allege is that the Ajamie defendants "repudiate[d] the validity" of the amended fee agreement by bringing suit in Texas state court to determine the parties' respective rights and obligations under the agreement. See Weiss Answer ¶¶ 74, 77. However, bringing suit to

11

determine the meaning of an agreement is not a breach of that
agreement absent some explicit contractual provision that the party
will not bring suit.  See, e.g., Bridgeport Music Inc. v. Universal
Music Group, Inc., 440 F. Supp. 2d 342, 345 (S.D.N.Y. 2006) ("When
parties have differing positions as to the meaning of a contractual
term, it can not be deemed a breach for one party to sue to enforce
its view of the contract.").  There was no such contractual provision
here.  Accordingly, since the Weiss defendants do not allege any
other breach of the agreement, the Ajamie defendants are entitled to
summary judgment dismissing the breach of contract cross-claim.

The Weiss defendants' second cross-claim, entitled "Denial of
Fees for the Unauthorized Practice of Law," is premised on the Weiss
defendants' argument, which the Court has now rejected as a matter of
law, that Ajamie engaged in the unauthorized practice of law.
Although the Ajamie defendants, through an apparent oversight, have
not formally moved for summary judgment on this cross-claim, their
opposition to the Weiss defendants' own summary judgment motion on
this issue is tantamount to a motion for summary judgment dismissing
this claim, and, in any event, given that both sides have already put
before the Court all their factual and legal arguments on this issue,
the Court exercises its power to grant summary judgment in favor of
the Ajamie defendants on the Weiss defendants' second claim.  See
Bridgeway Corp. v. Citibank, 201 F.3d 134, 140 (2d Cir. 2000).

Finally, as to the Weiss defendants' third cross-claim,[3] entitled "Tortious Interference with the Attorney-Client Relationship and the Violation of Good Faith and Fair Dealing," the Court finds that there remain genuinely disputed issues of material fact that preclude summary judgment on this claim, and hence the Ajamie defendants' motion with respect to this claim is denied.

Accordingly, the summary judgment motion of the Weiss defendants is granted in so far as it seeks enforcement of the amended fee agreement as a matter of law and is denied in all other respects, and the summary judgment motion of the Ajamie defendants is granted as to the dismissal of the Weiss defendants' first and second cross-claims but is denied in all other respects.

Counsel for all parties are reminded that trial of all remaining claims will commence at 9 a.m. on April 7, 2008. The Clerk of the Court is directed to close documents number 65 and 67 in the Court's docket.

SO ORDERED.

JED S. RAKOFF, U.S.D.J.

Dated:  New York, New York
        February 27, 2008

---

[3] The Ajamie defendants have not moved for summary judgment on the Weiss defendants' fourth cross-claim.

13